[Civ. No. 22955. Second Dist., Div. Two. Oct. 22, 1958.]

ARTHUR J. JENNER et al., Appellants, v. CITY COUNCIL OF THE CITY OF COVINA et al., Respondents.

Fred N. Howser, Robert H. Aarons and Edward Raiden for Appellants.

Maurice O'Connor, City Attorney (Covina), O'Melveny & Myers, Pierce Works, Howard J. Deards and Franklin T. Hamilton for Respondents.

FOX, P. J.—Plaintiffs, property owners in the district, attack (1) the proceedings taken by the city of Covina under the Vehicle Parking District Law, as amended (Sts. & Hy. Code, § 31500 et seq.), for the formation of Vehicle Parking District Number 1 of said city, (2) the apportionment of the assessment to cover the cost and expenses of the improvements, and (3) the validity of certain sections of the Streets and Highways Code. More specifically, they seek to enjoin the sale of bonds upon the properties within the assessment district from which funds the project will be financed. Having been denied any relief in the trial court, the plaintiffs have appealed.

On August 22, 1955, the city council, after due notice, held a public hearing on the ordinance of intention to create the vehicle parking district in question. At that meeting there was read to the city council and the other people present a report required by the Special Assessment Investigation, Limitation and Majority Protest Act of 1931 (Sts. & Hy. Code, § 2800 et seq.). This report was prepared by engineer Pack under the supervision of City Engineer Kressly. The matters covered by this report are enumerated in section 2825 of the Streets and Highways Code. Such report provided considerable information as to the general nature, location and extent of the proposed improvements, the lands

proposed to be assessed to provide the funds to construct the improvements, itemized estimates of the costs, the total estimated cost of the project, the assessed value and true value of the property within the district and other related matters.

In addition, engineer Pack testified as to the boundaries of the district, the size and location of the parking lots and the improvements to be made thereon, and also stated that in his opinion all lands within the assessment district would be benefited.

The proposed district, excluding the lots to be used for the parking and other publicly owned property, consists of 161 parcels. Two of those are churches and 72 are residential. Testimony was presented that these properties would not be benefited. It was pointed out, however, that these residential properties were adjacent to the commercial area and if rezoning for commercial use was likely, they would now receive a potential benefit that would greatly increase immediately upon their being so rezoned. It was also represented to the council that certain commercial properties in the district would receive no benefits, and that nearby business properties outside of the proposed district would receive greater benefits than certain other properties included within the district. At this hearing all protests or objections that had been filed with the city were read and all persons who desired to be heard were heard personally or through their attorneys, and any evidence they desired to present was received.

Tabulation revealed that 42.73 per cent of the qualified area protested the formation of the district. The city council thereupon overruled the protests and adopted a resolution making the necessary findings under the Debt Limitation Act of 1931, prerequisite to the formation of the Vehicle Parking District. Also, an ordinance authorizing the formation of the district and the filing of the necessary condemnation suits was given a first reading.

The hearing on the spreading of the assessment was held during three separate meetings of the city council. The assessment, showing the spread thereof, was presented to the city council on January 28, 1957. The superintendent of streets was sworn and testified that the assessment was prepared under his direction by Mr. Thompson and that, in the opinion of the superintendent of streets, the assessment had been spread on the lands within the district in proportion to benefits to be received. Mr. Thompson was then sworn

and testified that in preparing the assessment he spread it in proportion to benefits. All written protests filed with the city were read and the city council then heard orally all property owners and other interested persons who desired to be heard and received all evidence they presented in regard to this matter. The hearing was thereupon continued to the meeting of February 14, 1957, at which time the council ordered certain modifications and continued the hearing to the meeting of February 26, 1957. At that hearing the council considered the proposed modifications previously ordered, heard testimony from Mr. Thompson to the effect that the proposed modifications would result in the assessment being spread in proportion to benefits. Mr. Thompson's testimony disclosed that a higher rate of assessment, based on the assessed value of the lands, was exacted from those properties nearest the parking lots while more distant property was assessed at a lower rate. Consideration also was given to the fact that commercial development would be somewhat lighter in some areas then in others.

During the course of the trial, plaintiffs offered testimony in an attempt to show that the city council acted arbitrarily in fixing the boundaries of the district and in spreading the assessment, that the assessment was not spread in accordance with benefits to be received. Such testimony, upon objection, was not admitted in evidence; the trial court limiting the plaintiffs to matters contained in the record made in the proceedings before the city council, and refused to consider evidence as to matters upon which the council had already made a determination.

The trial court found, in effect, that the omission of specified property from the district was not arbitrary, unreasonable or an abuse of discretion and that there was substantial evidence before the council which, if believed, supported the formation of the district, as formed, the apportionment of the assessment, as apportioned, and the confirmation of the assessment, as confirmed.

Plaintiffs argue that there was no substantial evidence to support the action of the defendants and, more specifically, no substantial evidence to support the seventh and sixteenth findings of fact made by the trial court.[1]

---

[1]These findings read as follows:

No. 7—''That the property depicted upon Exhibit A to the complaint on file herein as to the Russell Davis Ford Agency property and the Aero-Jet General Corporation property was not included within the

■ Preliminary to a consideration of the substantiality of the evidence in support of the council's action, it is necessary to consider plaintiffs' contention that the testimony of several of the witnesses was incompetent. The testimony of Mr. Pack, who participated in the formation of the district, to the effect that he believed all the property within the district would be benefited, is attacked on the grounds that the witness was not under oath, that there was no evidence that he was an expert, and that there was nothing in the record indicating the basis for his opinion. Substantially the same attack is made upon the testimony of Mr. Thompson, who testified that the assessment was spread in keeping with the benefits.

The record, however, shows that Mr. Thompson and Mr. Freeman, the Superintendent of Streets, were under oath. While it does not appear that Mr. Pack was sworn, *Flagstad v. City of San Mateo*, 156 Cal.App.2d 138 [318 P.2d 825], indicates that testimony not under oath in a council meeting is nevertheless competent evidence. At page 141 the court stated that ''it is clear that witnesses in a council proceeding of this sort need not be sworn (citation). 'If perchance the procedure before the council lacked some of the formality observed by judicial tribunals their decision is nonetheless vital and effective' (citation).''

While it is clear that mere uncorroborated hearsay or rumor is not competent evidence (*Armistead v. City of Los Angeles*, 152 Cal.App.2d 319, 324 [313 P.2d 127]), the strict rules of evidence which obtain in the courts are not enforced in administrative proceedings (see *Suckow v. Alderson*, 182 Cal. 247, 251 [187 P. 965] ; *Flagstad v. City of San Mateo, supra*). In the case at bar, the mere fact that no formal foundation was laid as to the expertise of the witnesses would not render their opinion testimony incompetent or otherwise improper in this proceeding. Also, plaintiffs' contention that the testimony of these witnesses constituted mere legal conclusions

boundaries of . . . District No. 1, but that the portion of the record . . . which was placed in evidence . . . does not disclose either that the omission of said property . . . was arbitrary, unreasonable or an abuse of the power and discretion . . . or that said omission caused plaintiffs or other property owners in said District to bear an unequal share of the assessments to be imposed.''

No. 16—''That substantial evidence was offered and received before the City Council which, if believed, would support the formation of . . . District No. 1, as formed, the confirmation of said assessment, as confirmed, and the apportionment of said assessment, as apportioned.''

in that no basis for the opinions was presented goes to the weight and not to the admissibility of the evidence.

The ultimate question then, is whether or not there was substantial evidence in the record to support the determinations of the city council and the findings made by the trial court.

■ Absent a showing of fraud or mistake, the determination by the city council that certain property would not be benefited by the creation of the parking district is conclusive. (See Sts. & Hy. Code, § 31564.) In *Larsen* v. *City & County of San Francisco*, 182 Cal. 1, at page 14 [186 P. 757], in an analogous situation, the court stated that "under the principles established in this state and elsewhere, this final decision of the supervisors as to the property benefited . . . is conclusive unless attacked on the ground of fraud or mistake." An examination of the record fails to disclose any fraud, mistake or arbitrary action on the part of the city council in fixing the boundaries of the district.

■ As to the general question of benefit and the spread of the assessment, the council found that the assessment was in keeping with the benefits and the trial court specifically found to this effect. (Finding No. 16, note, *supra*.) ■ The determination made by a local administrative body will be sustained if there is substantial evidence in the record to support its decision. (*Damiani* v. *Albert*, 48 Cal.2d 15 [306 P.2d 780]; *Fascination, Inc.* v. *Hoover*, 39 Cal.2d 260 [246 P.2d 656].) ■ The reviewing court will not weigh the evidence nor consider evidence contrary to that in support of findings made by the board. (*Thompson* v. *City of Long Beach*, 41 Cal.2d 235, 240 [259 P.2d 649]; *Chenoweth* v. *Office of City Clerk*, 131 Cal.App.2d 498, 501 [280 P.2d 858].)

■ Relying on *Spring Street Co.* v. *City of Los Angeles*, 170 Cal. 24 [148 P. 217, L.R.A. 1918E 197], plaintiffs argue, however, that a court will set aside an assessment where there is a manifest failure to assess according to benefits. But, before a court will so act, there must appear in the record convincing and conclusive evidence that under no conceivable conditions could the property be benefited in the proportion reflected by the assessment. (See *Cutting* v. *Vaughn*, 182 Cal. 151, 156 [187 P. 19].) ■ In the instant case there was testimony by Mr. Pack that all the land within the district would be benefited. Mr. Hamilton, special counsel to the city, explained that residential property usually is not assessed unless it appears that such property has commercial

potential, and if it does, it may be assessed for it has been benefited. Mr. Freeman, the Superintendent of Streets, testified that the spread of the assessment was in proportion to benefits, as did Mr. Thompson, who was experienced in this field, and who was employed specially by the city to spread the assessment. In addition, Mr. Thompson further testified as to the scheme employed in fixing the individual assessments; the property in closest proximity to the proposed parking lots being assessed at a higher rate than those parcels more remote.

It clearly was reasonable for the council to rely upon the testimony of the engineer, the superintendent of streets, and Mr. Thompson, retained specifically to make an equitable apportionment of the assessment. Furthermore, the original assessments were reconsidered and altered in an effort to accord greater equality before they were confirmed by the council. Under these circumstances and in view of the above evidence, the trial court was fully warranted in concluding that there was substantial evidence before the city council to support its determination.

Plaintiffs assert that sections 31556 and 31625 (plaintiffs undoubtedly mean section 31623—for that is the section from which they quote in their opening brief) of the Streets and Highways Code are unconstitutional.[2]

As no objection to the constitutionality of section 31625 (nor 31623) was made prior to this appeal, it is not open to review for the first time in this court. Issues which are not raised or presented to the trial court will not be considered by the reviewing court. (*Estate of Cunningham,* 148 Cal.App.2d 8, 13 [305 P.2d 920]; *Buckmaster* v. *Silva,* 103 Cal.App.2d 335, 338 [229 P.2d 799].) "The right to question the constitutionality of a statute may be waived. 'It is the general rule applicable in civil cases that a constitutional question must be raised at the earliest opportunity or it will be considered as waived.' (Citation.)" (*Hershey* v. *Reclamation Dist. No. 108,* 200 Cal. 550 564 [254 P. 542].) Plaintiffs challenge section 31556 on the theory that

[2]Section 31556 provides that ''any land which in the judgment of the legislative body will not be benefited shall not be included in the district.''

Section 31623 provides that ''upon receiving the diagram, the street superintendent shall assess the total cost and expense of the proposed acquisition and improvement, less contributions by the city and expenses to be borne by the city, against the land within the district subject to assessment, in proportion to the benefits to be derived from the acquisition and improvement.''

it permits the local authorities to omit property from the district upon their determination that it will not be benefited, yet the statute provides no guide as to what shall constitute a benefit, and that the absence of a standard or guide leaves the determination of benefit subject to the arbitrary action of the local legislative body. While it is clear that a statute may not repose a wholly unregulated discretion in an administrative board, a delegation of authority is not objectionable if accompanied by an adequate standard to guide the agency in the exercise of the delegated power. How precise and detailed the standard should be varies. A balance between unbridled discretion on the one hand, and unwarranted interference with the local agency on the other, must be struck. In the present case, the policy of the Legislature is clear in that the test for omission is stated to be "nonbenefit"; a further refinement of this criterion would serve no useful purpose for it too would be subject to the same argument that plaintiffs are now making unless it was so detailed as to restrict the exercise of any real judgment by the local authorities. This latter result would subvert the very purpose behind the delegation of authority, viz., leaving the determination to those who are acquainted with the individual and varying local conditions. Furthermore, what might be considered a benefit in one case could well be a detriment in another, and this fact militates against the fixing of any rigid standard. Also, in this regard, it may be noted that delegated authority has been upheld where far less of a guide was provided than in the present case. In *Holloway* v. *Purcell*, 35 Cal. 2d 220, 231 [217 P.2d 665], the following standard was deemed sufficient: "On such terms and conditions as in its opinion will best subserve the public interest." In view of the above, plus the fact that judicial review provides a safeguard against wholly unsubstantiated action, the statute is not constitutionally objectionable.[3]

 Plaintiffs contend that the trial court erred in excluding material evidence in respect to the establishment of the district and the spread of the assessment. In effect, plaintiffs maintain that they were entitled to a trial de novo. The rule in California is that upon review of the decision of a local administrative body, the reviewing court is con-

---

[3]The Vehicle Parking District Act of 1943 was held to be constitutional in *City of Whittier* v. *Dixon*, 24 Cal.2d 664 [151 P.2d 5, 153 A.L.R. 956].

cerned only with the presence or absence of substantial evidence in the agency record which will support the agency's determination. The reviewing court may not consider evidence which was not presented to the local board; there is to be no trial de novo with respect to matters upon which the agency was authorized to and did in fact decide. As stated in the *Damiani* case, *supra,* at page 17, "the court is confined to whether there was substantial evidence before the commission to support its findings." In the *Fascination* case, *supra,* the court stated, at page 264, that "the trial court is limited to an examination of the matters considered and examined by the officers in arriving at their decision; to an ascertainment of whether such matters were sufficient to justify denying the license."

██ Plaintiffs urge that an exception to the above rule prohibiting a trial de novo exists when it is alleged that the local agency acted fraudulently, arbitrarily or capriciously, citing *Saks & Co.* v. *Beverly Hills,* 107 Cal.App.2d 260 [237 P.2d 32]. However, it is settled that the trial court may not reconsider the precise question which the local agency had authority to decide. In the *Fascination* case, *supra,* the court made the following observation, at page 265, regarding the exception stated in the Saks case: "Plaintiff cites *Saks & Co.* v. *City of Beverly Hills* [citation], where the attack was on revocation of a zoning ordinance variance by a city council, and the court said that where there is a pleading and proof that a local board acted arbitrarily, capriciously or fraudulently, the superior court will afford petitioner a trial de novo. *If that means that such a trial may be granted where the question presented is the precise one the local agency had authority to decide and did decide, it is contrary to the foregoing authorities and must be disapproved.*" (Emphasis added.)

██ In the case at bar, the city council conducted hearings and heard testimony and then fixed the boundaries of the district and the apportionment of the assessment. To allow plaintiffs to introduce evidence in the trial court on this same question would clearly be within the prohibition of the *Fascination* decision.

██ Furthermore, plaintiffs' allegation that the assessments were "arbitrary, unreasonable and an abuse of discretion vested in the defendants" were insufficient to raise the issue of fraud. The allegation that "said city council arbitrarily, unreasonably, and fraudulently denied said appeals, accepted said work and confirmed the assessment . . ." was

held insufficient to raise the issue of fraud in *Richardson* v. *City of Redondo Beach*, 132 Cal.App. 426, 433 [22 P.2d 1073].
 "Fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute the fraud. It is not sufficient to allege it in general terms or in terms which amount to mere conclusions." (*Hannon* v. *Madden*, 214 Cal. 251, 267 [5 P.2d 4].)

 Plaintiffs erroneously contend that the trial court's failure to make findings of fact as to paragraphs XVI-XIX and as to plaintiffs' second cause of action was reversible error. It should be noted that conclusions of law as to these allegations were made. While it is error to omit findings on a material fact placed in issue (Cal. Code Civ. Proc., § 632; *San Jose Abstract & Title Co.* v. *Elliott*, 108 Cal.App. 2d 793 [240 P.2d 41]), "the failure to find on an issue is not ground for reversal where the record discloses no evidence on which a finding favorable to the complaining party could properly have been made." (*Maloof* v. *Maloof*, 175 Cal. 571, 573 [166 P. 330].) Further, no finding of fact is necessary on a question of law. (*City of Alameda* v. *City of Oakland*, 198 Cal. 566, 578 [246 P. 69]; *Wadler* v. *Justice Court*, 144 Cal.App.2d 739, 744 [301 P.2d 907].)

 Plaintiffs in paragraphs XVI-XIX alleged that the following sections of the Streets and Highways Code were unconstitutional: 31513, 31540, 31563, 31564, 31565 and 31556. The same sections were the subject of plaintiffs' claim for declaratory relief in his second cause of action.

If it is plaintiffs' position that the above code sections are void, then only a question of law is raised and no findings are required. On the other hand, if plaintiffs are of the disposition that these sections are not void, but only invalid as applied, then the fact that no evidence was introduced in the administrative proceedings or in the trial court to support this position leaves the record wholly devoid of any evidence which would support a finding favorable to plaintiffs and, therefore, under the above stated rule, the trial court did not commit error in failing to find on this issue.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied November 18, 1958, and appellants' petition for a hearing by the Supreme Court was denied December 17, 1958.