No. 13672

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

DOUGLAS L. SCHUMACHER, M.D., et al.,

Plaintiffs and Appellants,

-vs-

THE CITY OF BOZEMAN, et al.,

Defendants and Respondents.

---

Appeal from: District Court of the Eighteenth Judicial
District,
Honorable Peter M. Meloy, Judge presiding.

Counsel of Record:

For Appellants:

McKinley Anderson argued, Bozeman, Montana
Drysdale, McLean & Screnar, Bozeman, Montana
James J. Screnar argued, Bozeman, Montana
Bennett and Bennett, Bozeman, Montana
Lyman Bennett III argued, Bozeman, Montana

For Respondents:

Berg, Angel, Andriolo & Morgan, Bozeman, Montana
Ben E. Berg Jr. argued, Bozeman, Montana

---

Submitted: October 4, 1977

Decided: NOV - 9 1977

Filed: NOV - 9 1977

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

In the District Court, County of Gallatin, plaintiffs sought 1) a writ of prohibition to restrain the City of Bozeman from any further action in Special Improvement District No. 565 to establish an off-street parking facility in the downtown area of Bozeman; 2) an injunction enjoining the City from selling special improvement district bonds or assessing property in Special Improvement District No. 565; and 3) a judgment declaring invalid the proceedings of the City of Bozeman in the creation of Special Improvement District No. 565.

The proceedings undertaken by the City of Bozeman in the creation of Special Improvement District No. 565 for the purpose of establishing off-street parking facilities in the downtown area may be chronologically summarized:

1. On June 16, 1976, the City Commission by Resolution No. 1795 announced its intention to create Special Improvement District No. 565 for the purpose of establishing an off-street parking facility in downtown Bozeman; designated the boundaries of the district; and, estimated the cost at $750,000.

2. On the same day, June 16, 1976, the City Commission also provisionally passed Ordinance No. 962, setting forth a proposed formula for the assessment of property to finance the off-street parking facility. At the time of the adoption of the ordinance, the City Commission designated July 7, 1976, as the time for hearing protests against the proposed formula.

3. On July 30, 1976, the City Commission amended its original resolution of intention to create Special Improvement District No. 565 by Resolution No. 1802 and designated July 21,

- 2 -

1976, as the time for hearing protests against the creation of Special Improvement District No. 565. Notices of the time and place of hearing were published and mailed as required by sections 11-2204 and 11-2205, R.C.M. 1947.

4. On July 7 and again on July 21, 1976, the City Commission held hearings on the proposed formula. They were attended by both proponents and opponents. As a result of the hearings the formula was amended to include the definition of "park" and as amended was finally passed and adopted on July 21, 1976.

5. Thereafter, on July 28, 1976, Resolution No. 1808 creating Special Improvement District No. 565 was passed and adopted by the City Commission.

6. On August 18, 1976, plaintiffs filed their complaint and the court issued a temporary restraining order and a writ of prohibition, scheduling both for hearing on August 31, 1976. On the latter date hearing was held, evidence introduced and thereafter on September 27, 1976, the court made findings of fact and conclusions of law in favor of defendants and judgment was entered on that day quashing the writ of prohibition, dissolving the injunction and dismissing the action. From that final judgment, plaintiffs appeal.

Appellants present a number of issues for review by this Court which will be treated in order:

First. Appellants allege the City did not have jurisdiction to create Special Improvement District (SID) 565, because 30 days had not elapsed after the adoption of Ordinance No. 962 when the City passed Resolution No. 1808 creating SID 565. This 30 day requirement is found in section 11-1106, R.C.M. 1947.

- 3 -

This section is not applicable because it does not apply to special improvement districts but only applies to matters of general legislation on which all electors whether taxpayers or not, may vote. Carlson v. City of Helena, 39 Mont. 82, 113, 102 P. 39 (1909).

Second. Appellants allege Ordinance No. 962 adopting a formula for assessment of off-streeting parking improvements, violates both the due process and the equal protection clauses of the United States and the 1972 Montana Constitutions, because:

(a) The notice of hearing was defective.

(b) The formula is inequitable.

(c) The city unlawfully delegated authority to determine the formula for assessment.

The formula had one very minor error which was corrected in the course of the hearing by the addition to the ordinance formula of the letter "P=existing parking" when the ordinance was finally adopted. This did not make the notice of the hearing defective.

At the outset we recognize it is fundamental to assessments for special improvements that the assessment be in proportion to the benefits conferred by the improvement. Smith v. City of Bozeman, 144 Mont. 528, 398 P.2d 462 (1965). The formula for assessment adopted by the City Commission includes all six factors required by section 11-2214(1)(d), R.C.M. 1947, but is divided basically into four components, being area, distance, demand and assessed value. To support their claim that the formula is discriminatory, appellants refer to four separate property comparisons drawn from a computer calculation of 172 separately evaluated properties within the proposed SID 565.

- 4 -

We note here that the computer layouts are not assessments made or to be made by the City of Bozeman under the adopted formula, but rather are estimates of cost comparisons made in a study conducted by the Parking Commission of the City of Bozeman. Judicial review of benefits or detriments to the property owners is premature until the actual assessments have been levied, and until then no constitutional question as to the validity of the formula of assessment can be raised or considered by the court. Murphy v. City of Bismarck, N.D. 1961, 109 N.W.2d 635.

Appellants claim the assessment formula was conceived by an unlawful delegation of commission powers. The studies relating to a downtown parking facility were commenced by the Parking Commission of the City of Bozeman in 1974. The original study was financed through the City by a $10,000 appropriation. The Downtown Development Association continued the study and advanced an additional $10,000. From the joint efforts of these two entities, a formula was devised and estimates made as to the approximate cost of the facility to all properties in the proposed district. All of this information was submitted to the City Commission jointly by the two organizations by a letter dated May 26, 1976. Thus, although the factual information for explaining the application of the formula was gathered by both the City Parking Commission and the Downtown Development Association, the formula for assessment did not become effective until after hearing by the City Commission and the final adoption by the City Commission.

2 McQuillin, Municipal Corporations, 3rd ed, §10.41, p. 856, summarizes the law on delegation:

"* * * Thus, the council may create committees or other bodies to investigate given methods, to procure information, to make reports and recommendations, the committee may be given authority to employ private consultants, but the council alone must finally determine every subject committed to its discretion and judgment."

And further in 4 McQuillin, 3rd ed., Municipal Corporations, §13.51, p. 573, it is stated:

"While it is true that the council may not delegate its power to a committee, when it ratifies the act of the committee in due form it becomes the act of the council."

Third. Appellants contend the determination by the City Commission that single family residences and churches would not be specifically benefited by a downtown parking facility was arbitrarily a violation of the equal protection and due process clauses of the United States and Montana Constitutions.

The record discloses no evidence was offered showing that churches and single family residences would be benefited by the off-street parking facility and therefore should be assessed. Jenner v. City Council of City of Covina, 164 C.A.2d 490, 331 P.2d 176,181 (1958), is almost identical on the facts and issues presented here. In Jenner the parking district consisted of 161 parcels, two were churches and 72 were residential. Testimony before the assessing board and in court indicated these properties would not be benefited. The trial court found the omission of the residential property from the district was not arbitrary, unreasonable or an abuse of discretion. On appeal, the Superior Court of Los Angeles County, held the evidence supported the findings that the district was properly formed; that the assessments were in keeping with the benefits; and the statute was not unconstitutional on the ground that it permitted local authorities to

- 6 -

omit property from the district. The District Court of Appeal of

California affirmed saying:

> "Absent a showing of fraud or mistake, the deter-
> mination of the City Council that certain property
> would not be benefited by the creation of the parking
> district is conclusive. * * * In Larsen v. City and
> County of San Francisco, 182 Cal. 1, at page 14, 186
> P. 757, at page 763, in an analogous situation, the
> court stated that 'under the principles established
> in this state and elsewhere, this final decision of the
> supervisors as to the property benefited * * * is con-
> clusive, unless attacked on the ground of fraud or mis-
> take.' An examination of the record fails to disclose
> any fraud, mistake or arbitrary action on the part of
> the City Council in fixing the boundaries of the district."
> 331 P.2d 181.

The clear rationale of these cases is that if reasonable

men might disagree as to whether single family residences and

churches will or will not be specially benefited by an off-street

parking facility, then in the absence of a clear showing of

fraud or mistake, the determination of the City Commission that

such property will not be specially benefited is conclusive. 14

McQuillin, Municipal Corporations, 3rd ed., §38.186.

Fourth. Appellants contend an off-street parking facility

in downtown Bozeman is a general government benefit rather than

a special benefit to the properties within the special improvement

district.

Appellants cite no cases supporting their contention. There

is authority directly on point and specifically deciding that a

downtown parking facility is a special benefit to the property in

the vicinity of the facility. In Northern Pacific Railway Co. v.

City of Grand Forks, N.D. 1955, 73 N.W.2d 348, 350, the North

Dakota Court answered the same contention:

"The constitutional question is general in nature and resolves into the question of whether in any circumstances the special assessment device can be used to defray the cost of a public off street parking lot without doing violence to the Constitution. An affirmative answer to this question depends upon whether property, in the vicinity of the parking lot, which has been constituted a special assessment district, derives a special benefit from the improvement in addition to the general benefit in which the whole city shares.

"We have no doubt but that property in the vicinity of a parking lot derives special benefit therefrom. Particularly is this true in the case of a congested business district which had its development before automobiles and trucks had become the great convenience and problem that they are today. In recent years there has been a trend toward a decentralization, evidenced by the removal of many businesses from congested areas to outlying districts where parking lots for customers were available. It is generally acknowledged and logically so, that the provision of parking space in the vicinity of a congested mercantile area, by making it conveniently accessible to trade, tends to reverse this trend and thus stabilize business in the area. This is a special benefit sufficient to justify special assessments."
73 N.W.2d 350.

Fifth. Appellants contend the method of the measurement of distance in the district is in error and cannot stand. This argument is apparently based on the idea that the formula fails to properly account for distance because it measures distance on a straight line rather than the actual walking distance. In this respect the statute, section 11-2214(d), R.C.M. 1947, does not specify the means of measuring distance and therefore it would seem the City has the liberty of selecting the most common, uniform, standard and shortest distance between two points, i.e. the straight line, rather than the circuitous and meandering routes suggested by appellants. If the City had selected appellants' method of measuring it would seem to impose a more difficult problem on the City Commission to apportion the assessment to attain equity of benefit.

Sixth. Appellants question the statutory authority of the City to purchase an off-street parking facility. They rely on section 11-2201, R.C.M. 1947, to support their position.

We find no support for that proposition when the section is read as a whole with particular reference to the first paragraph which states in part:

"* * * the city counsel of each municipality * * * is hereby invested with jurisdiction to acquire private property for right of way * * * under the proceedings hereinafter described." (Emphasis added.)

Subparagraph (4)(a) of section 11-2201 specifically authorizes formation of special improvement districts for off-street parking facilities. Finally, subparagraph (4)(e) of section 11-2201, states:

"(e) An improvement district formed for the purposes of establishing a pedestrian mall or off-street parking may be financed in accordance with the provisions of section 11-2214, R.C.M. 1947, and/or in accordance with the methods of financing set forth for the construction of water or sewer systems as set forth in section 11-2218, R.C.M. 1947." (Emphasis added.)

With no ambiguity the statute authorizes the acquisition of private property, and purchase is not excluded, for special improvement districts for the purposes specifically authorized. Finally, financing is authorized by assessment or revenue bond sales.

Seventh. The most serious matter we are asked to review concerns the voting participation on the special improvement district in question by Commissioner Taylor, who is alleged to have a financial interest in the district parking.

Prior to the creation of the SID, Commissioner Taylor purchased business property within the boundaries of the SID with intent to remodel for office use. On April 20, 1976, Taylor applied for a building permit and was denied because he

- 9 -

only provided for 51 off-street parking stalls instead of the 191 required by the area zoning. Taylor appealed to the Board of Adjustment and hearing was had and appeal denied on May 4, 1976. Taylor applied again after the resolution to form the SID was passed and upon which he voted. He was again denied because of the 51 off-street parking stalls and the present requirement for 183 stalls. Taylor again appealed to the Board of Adjustment. We note here there is nothing in the record to indicate what transpired at the hearing on appeal before the Board of Adjustment. A variance was approved for 88 off-street parking stalls for Commissioner Taylor.

The question is whether the voting participation of Commissioner Taylor, disqualified because of his interest, voids the entire proceedings even though his vote was not needed to constitute the required number to pass SID No. 565 and there were no dissents.

Generally a city councilman may not vote on an issue in which he has a direct or indirect interest. Not every interest of a councilman is considered to disqualify him; each instance is necessarily a factual question. For example, it is generally held that the fact a councilman has an interest in property within a proposed special improvement district does not disqualify him from acting on the formation of the district. 4 McQuillin, Municipal Corporations, 3rd ed., §13.35a.

The tests of disqualification are variously stated, in some instances by statute. In 4 McQuillin, Municipal Corporations, 3rd ed., §13.35, p. 529, it is stated that disqualification is warranted:

"* * * whenever a public official, by reason of his personal interest in a matter, is placed in a situation of temptation to serve his own purposes, to the prejudice of those for whom the law authorizes him to act."

Taylor would not be disqualified from voting on whether to create a special improvement district solely because he owned property within the district. However, here, Taylor had an appeal before the local Board of Adjustment requesting a variance from the number of off-street parking stalls he would have to provide for his business property. The difference between the number of required stalls and the number he proposed in his building permit was substantial--- approximately 183 stalls required as opposed to 51 proposed. The resolutions creating the special improvement district to finance building additional off-street parking were passed in June and July, 1976. Whether these resolutions actually had any effect on the Board of Adjustment's August 4, 1976 decision to grant Taylor the variance is unknown. The variance, however, saved him substantial additional expenditure.

As a city commissioner, Taylor is entrusted with certain duties and responsibilities to carry out the governing functions of the city. His position places him on a different level of review regarding his business transactions, than would be that of the ordinary citizen.

All courts that have considered the issue are agreed if a disqualified commissioner's vote was necessary to constitute the number required for passage, such a vote renders the entire proceeding void. Not all jurisdictions, however, are agreed as to what effect a vote by a disqualified commissioner has on the

- 11 -

proceedings where his vote is not necessary to pass the issue. Some jurisdictions hold that such a vote has no effect on the validity of the proceedings. Others hold that such a proceeding is _void_, while still others hold that it is only _voidable_. 62 C.J.S. Municipal Corporations §402.

Although we have not previously dealt with this question, the legislature has passed statutes governing city councilmen and commissioners in an analogous situation. No city councilman nor commissioner may be interested, directly or indirectly, in any contract with the city. Sections 11-3127 and 11-3214, R.C.M. 1947. Section 11-3214 also provides the commission _may declare void any contract_ in which a commissioner is or may be interested.

New York, New Jersey and Iowa hold that a vote cast by a commission member who is disqualified renders the _proceeding either void or voidable,_ even though the disqualified member's vote was not needed to pass the issue. Baker v. Marley, 8 N.Y.2d 365, 208 N.Y.S.2d 449, 170 N.E.2d 900 (1960); Aldom v. Borough of Roseland, 42 N.J.Super. 495, 127 A.2d 190, 197 (1956); Wilson v. Iowa City, Iowa 1969, 165 N.W.2d 813, 820. These decisions do not clearly distinguish between whether the action of the commission is _void or merely voidable_. Often such a decision is governed by statute. See: Section 11-3214, R.C.M. 1947.

Numerous reasons are given for declaring such action void or voidable. Pyatt v. Mayor & Council of Borough of Dunellen, 9 N.J. 548, 89 A.2d 1, 5 (1952), states:

> "Public policy forbids the sustaining of munici-
> pal action founded upon the vote of a member of the
> municipal governing body in any matter before it
> which directly or immediately affects him individually."

Other courts hold that when a municipal body passes on resolutions and ordinances, it acts in a quasi-judicial manner. If any of

the council members who participated as a quasi-judge were at the time disqualified by reason of private interest at variance with the impartial performance of his public duty, such proceedings are void. Aldom v. Borough of Roseland, supra; Pyatt v. Mayor & Council of Borough of Dunellen, supra. The bias of the interested person taints the action of the whole body. Pyatt v. Mayor & Council of Borough of Dunellen, supra. In Piggott v. Borough of Hopewell, 22 N.J.Super.106, 91 A.2d 667, 670 (1952), this was found to be so for two reasons:

> "'First, the participation of the disqualified member in the discussion may have influenced the opinion of the other members; and, secondly, such participation may cast suspicion on the impartiality of the decision. [Citing cases.] It being impossible to determine whether the virus of self-interest affected the result, it must needs be assumed that it dominated the body's deliberations, and that the judgment was its product.'"

The cases which have held the vote of a disqualified commissioner does not vitiate the proceedings where his vote was not needed to pass the issue have rejected the two factors considered in Piggott. See: Singewald v. Minneapolis Gas Company, 274 Minn. 556, 142 N.W.2d 739 (1966); Eways v. Reading Parking Authority, 385 Pa. 592, 124 A.2d 92 (1956); Marshall v. Ellwood City Borough, 189 Pa. 348, 41 A. 994 (1899). The rationale behind Eways and Marshall is that the "illegal" vote does not affect the "legal" votes. The Marshall court downplays the influence the "illegal" voter may have on the "legal" voters, particularly when there is a large group of voters and only one illegal voter.

As our discussion reveals there seems to be no question on the issue of Commissioner Taylor being disqualified under the

circumstances that existed. There is also no question that his vote was not required to pass the ordinance which opens the proceedings to a wide range of opinion as to validity, as heretofore discussed.

Although Montana has not treated this matter judicially, the legislature has spoken through its enactment of section 11-3242, R.C.M. 1947, which is legally and ethically analogous to the instant situation and permits a city commission or council to examine the facts, and, if so moved, to void the transaction. As heretofore stated, we are lacking facts in the record before us to make determinations beyond the legal finding that the City Commission or Council could initially examine the transaction and make a finding. However, in case of refusal to act by the Commission or Council or an adverse finding to the petitioners, there would be the customary recourse to the courts.

The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice.

_____

_____

_____
Justices.