2005 ND 106

Henry D. KLINDT, Carlton Heck, Joseph E. Phillips, Dennis Berg, Alfred Byron, Mary Ridley, Orville Simundson, Bill Hardy, Terry Busse, Shane Heck, Grace Busse, Allan Smith, Laurel Brusseau, Laurel Smith, Wade Klindt, Rosanna Carignan, Ronald Carignan, Bonnie Carignan, Randy Carignan, Richard Heck, Eggert J. Einarson, Floyd Simundson, Elden Syrup, Tim Smith, Arni Johnson, Dick Simundson, Petitioners, Appellees and Cross–Appellants

v.

**PEMBINA COUNTY WATER RE-SOURCE BOARD, Respondent, Appellant and Cross–Appellee**

and

**Pembina Board of County Commissioners, Respondent.**

No. 20040299.

Supreme Court of North Dakota.

June 2, 2005.

Rehearing Denied July 13, 2005.

Joseph J. Cichy, Olson Cichy Bliss, Bismarck, ND, for petitioners, appellees and cross-appellants.

Neil W. Fleming, Fleming, DuBois & Fleming, P.L.L.P., Cavalier, ND, for respondent, appellant and cross-appellee.

SANDSTROM, Justice.

[¶ 1] The Pembina County Water Resource Board ("Board") appealed from a district court order dissolving the Tongue River Snagging and Clearing Project No. 1, and from an order awarding costs, disbursements, and attorney fees to Henry D. Klindt and other landowners. Klindt and the other landowners cross-appealed from the orders dissolving the project. We conclude the district court did not err in ruling there was sufficient evidence for the Board to reasonably determine the entire watershed would benefit from the proposed project. We also conclude the court did not err in ruling the Board was arbitrary and unreasonable in deciding to assess the costs of the project only against landowners living within that part of the Tongue River drainage basin located in Pembina County after finding the entire watershed would benefit from the project.

We conclude the court erred, however, in ordering dissolution of the project as the proper remedy for the Board's error and in awarding the landowners their attorney fees from the Board. We affirm in part, reverse in part, vacate the assessment, and remand to the Board for reassessment of the costs of the project.

I

[¶ 2] The Tongue River watershed includes the entire drainage area of the Tongue River, which has its source in east central Cavalier County and flows east and northeast in a winding course across Pembina County to its confluence with the Pembina River near Pembina. The area of controversy in this case, referred to as the "loop," is located where the river bends in a southerly direction for a short distance and then bends again in a northerly direction. During the 1950s, a straight-line diversionary channel was cut in the vicinity where the river bends southward, allowing overflow water to bypass the loop and continue straight eastward where the water reconnects with the Tongue River as it flows north. A large assessment drain, Drain # 16, is located south of the loop. Water from Drain # 16 flows into the loop and flows north to where it eventually meets and flows north with water diverted by the straight-line channel.

[¶ 3] The Board received a complaint that there were numerous blockages in the Tongue River causing water to flow through the straight-line diversionary channel rather than through the original river channel. After investigating the matter and holding a public hearing, the Board decided to establish a snagging and clearing project beginning in the loop at the end of Drain # 16 and extending five miles downstream in a northerly direction. On August 5, 2003, the Board passed a resolution establishing the "Tongue River Snagging & Clearing Project No. 1," estimating its cost at $75,000, outlining the benefited area, and approving an assessment on the affected landowners. On the same day, the Pembina County Board of County Commissioners ("Commissioners") adopted a resolution approving the project outlined by the Board and authorizing the County Auditor to assess a levy on the affected landowners.

[¶ 4] On September 3, 2003, Klindt and other affected landowners ("landowners") appealed the resolutions authorizing the project to district court, alleging the project and assessment violated state law. The court ordered the Board "based upon its record in this matter to develop Findings of Fact and Conclusions of Law establishing the basis of why the Tongue River Snagging Clearing Project No. 1 was created and why the Appellants in this case were included in the district." The subsequent findings signed by the chairman of the Board explained:

1. The Tongue River as it flows through Sections 8, 9, 10, and 17—162–52 is a natural water course.

2. There were obstructions in the Tongue River at Sections 8, 9, 10, and 17—162–52 that required the Water Board to undertake a snagging and clearing project.

3. Various federal government agencies had earlier determined that the lands described in the attached Appendix A consisted of The Tongue River Watershed (see attached Appendix A).

4. All of the lands both agricultural and non-agricultural in the Tongue River Watershed contribute waters to the Tongue River and would benefit from a snagging and clearing project at the location mentioned.

5. In accordance with 61–16.1–15 of the North Dakota Century Code, upstream landowners must share with downstream landowners the responsibility to provide for the proper management of surface waters.

6. The proposed project is necessary to properly manage the service waters in the Tongue River Watershed.

7. The estimated costs of the project was $75,000.

The findings also included a list of the assessments for the project by name, property description, and amount. Although landowners within the drainage basin located in Pembina County were assessed the cost of the project, Cavalier County landowners within the watershed were not assessed.

[¶ 5] The district court ruled "the record is sufficient for the water board to find that the entire watershed is benefitted by the snagging and clearing project." However, the court further ruled:

[T]he decision to assess only that portion of the Tongue River drainage basin within Pembina County is arbitrary and unreasonable. The Appellees to this action cannot assert that the entire watershed is benefitted by the snagging and clearing project then create an assessment district that does not include the entire watershed. Confining the assessment district to Pembina County is an arbitrary act not consistent with the water board's findings of fact.

The law requires that when a special assessment is imposed it is to be "levied against the land and premises benefitted by the project[.]" NDCC 61–16.1–09.1.

[¶ 6] The court ordered that "the 'Pembina County Tongue River Snagging and Clearing Project No. 1 and approving assessments' adopted August 5, 2003 by the Pembina County Commission be dissolved" and that the landowners be "awarded their costs and fees including attorney fees as allowed by statute."

[¶ 7] The board appealed, and the landowners cross-appealed. The Commissioners did not file an appeal.

II

[¶ 8] The Board argues the landowners were required to appeal its determination of the benefited land to the state engineer rather than to the district court.

[¶ 9] The right of appeal is governed solely by statute, and without any statutory basis to hear an appeal, a court must take notice of the lack of jurisdiction and dismiss the appeal. *Mann v. North Dakota Tax Comm'r*, 2005 ND 36, ¶ 7, 692 N.W.2d 490. Under N.D.C.C. § 61–16.1–54, "[a]n appeal may be taken to the district court from any order or decision of the water resource board by any person aggrieved." However, N.D.C.C. § 61–16.1–23 provides:

After the hearing provided for in section 61–16.1–22, affected landowners and any political subdivision subject to assessment, having not less than twenty-five percent of the possible votes, as determined by section 61–16.1–20, who believe that the assessment had not been fairly or equitably made; or that the project is not properly located or designed, may appeal to the state engineer by petition, within ten days after the hearing on assessments, to make a review of the assessments and to examine the location and design of the proposed project.... Upon filing a bond for two hundred fifty dollars with the board for the payment of the costs of the state engineer in the matter, any landowner or political subdivision who or which claims that the landowner or political subdivision will receive no benefit at all from the construction of a new project

may appeal to the state engineer within ten days after the hearing on assessments, the question of whether there is any benefit. The state engineer may not determine the specific amount of benefit upon an appeal by an individual landowner or political subdivision, but shall only determine if there is any benefit to the landowner or political subdivision, and the determination of the state engineer upon such question is final.

Although appeals are not authorized from state engineer decisions regarding the benefits of a proposed drainage project, water resource board decisions regarding assessments for drainage projects may be appealed to district court under the general appeal provisions of N.D.C.C. § 61–16.1–54. *Investment Rarities, Inc. v. Bottineau County Water Res. Dist.*, 396 N.W.2d 746, 748 (N.D.1986).

[¶ 10] The cost of the Tongue River Snagging and Clearing Project No. 1 was $75,000. Section 61–16.1–09.1(1)(b), N.D.C.C., provides that "[i]f the assessment is for a project costing less than one hundred thousand dollars, no action is required for the establishment of the assessment district or the assessments except the board must approve the project and assessment by a vote of two-thirds of the members and the board of county commissioners of the county must approve and levy the assessments to be made by a vote of two-thirds of its members." Under this statute, projects costing less than $100,000 are not subject to the assessment procedures required by N.D.C.C. § 61–16.1–22. Because N.D.C.C. § 61–16.1–23 applies only after the provisions of N.D.C.C. § 61–16.1–22 have been followed, N.D.C.C. § 61–16.1–23 does not apply under the circumstances. Therefore, the landowners were not required to appeal the benefits question to the state engineer to exhaust administrative remedies in this case.

[¶ 11] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 11–11–39, 27–05–06, 28–34–01 and 61–16.1–54. The appeals are timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01, 28–27–02 and 28–34–01.

## III

[¶ 12] Our standard of review in appeals from decisions of water resource districts is outlined in *Douville v. Pembina County Water Res. Dist.*, 2000 ND 124, ¶ 5, 612 N.W.2d 270 (quoting *Graber v. Logan County Water Res. Bd.*, 1999 ND 168, ¶ 7, 598 N.W.2d 846):

> In an appeal from the decision of a local governing body under N.D.C.C. § 28–34–01, our scope of review is the same as the district court's and is very limited. Our function is to independently determine the propriety of the decision, without according any special deference to the district court's decision, and unless the Board acted arbitrarily, capriciously or unreasonably, or there is not substantial evidence to support the decision, it must be affirmed. A decision is not arbitrary, capricious or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation.

## A

[¶ 13] We first address the landowners' claim in their cross-appeal that the Board's determination that all lands in the watershed would benefit from the project is arbitrary and unreasonable because there is no factual basis to support it.

[¶ 14] The landowners' argument is premised on 2003 legislative amendments

to N.D.C.C. § 61–16.1–09.1 that were in effect at the time the Board and the Commissioners approved the resolutions authorizing the project. Section 61–16.1–09.1(1), N.D.C.C., currently provides, in relevant part:

A water resource board may undertake the snagging, clearing, and maintaining of natural watercourses and the debrisment of bridges and low water crossings. The board may finance the project in whole or in part with funds raised through the collection of a special assessment levied against the land and premises benefited by the project.

Before this provision was amended in 2003, the second sentence provided the "board may finance the project in whole or in part with funds raised through the collection of a special assessment levied against the land and premises *within the watershed* benefited by the project." 2003 N.D. Sess. Laws ch. 552, § 1 (emphasis added). The landowners argue the legislature's removal of the phrase, "within the watershed," from the statute was intended to prevent water resource boards from automatically assessing the landowners in the entire watershed for the costs of a project because not all land within a particular watershed will necessarily benefit from a proposed project. *See Hearing on S.B. 2278 Before the House Natural Resources Comm.*, 58th N.D. Legis. Sess. (March 14, 2003) (testimony of Sen. Fischer). According to the landowners, the amendment and its history establish that assessing the entire watershed, without an investigation and specific findings that the land within the watershed will be benefited, is contrary to law.

[¶ 15] We see nothing in the language of N.D.C.C. § 61–16.1–09.1(1) or in the legislative history of the 2003 amendment that precludes a water resource board from finding that an entire watershed would be benefited by a snagging and clearing project, even if the legislative intention of the amendment was to allow assessments of less than all of the land within a watershed. The Board specifically found the entire watershed would be benefited by the project, and this finding is not contrary to law.

[¶ 16] The landowners, relying on *Stanley v. City of Salem*, 247 Or. 60, 427 P.2d 406, 407 (1967), also argue that property benefited by a project should be interpreted as property that will be enhanced in value, and that there is no evidence to support an assessment on all of the land within the watershed. *Stanley* is distinguishable because N.D.C.C. § 61–16.1–21 directs that "[i]n determining benefits the board shall consider, *among other factors*, property values, degree of improvement of properties, productivity, and the water management policy as expressed in section 61–16.1–15." (Emphasis added). Moreover, this Court has refused to provide an all-encompassing definition for determining "benefit" in the context of water resources law. In *Anderson v. Richland County Water Res. Bd.*, 506 N.W.2d 362, 367 (N.D.1993), a township was not originally assessed for a drain established in 1961, but the water resource board reapportioned benefits and assessments in 1991, determined the township benefited from the drain, and assessed landowners within the township. Because their land had not changed since the flood control district's 1961 decision that their land was not benefited by the drain, the landowners argued the water resource board's determination that the land is presently benefited by the drain was based on an arbitrary and capricious standard. This Court rejected the landowners' argument:

The landowners' contention that the Board is using an arbitrary and capricious standard for determining benefit,

implicitly asks us to determine "benefit." The legislature has left the task of determining "benefit" to Water Resource Districts. Accordingly, we will not substitute our judgment for that of the Richland County Water Resource Board.

*Anderson*, 506 N.W.2d at 367.

[¶ 17] As in *Anderson*, the record in this case establishes that the Board and the Commissioners extensively discussed and investigated the proposed project, and the question of benefit to the land was contested during the process leading to the adoption of the resolutions. The question was also a focus of attention at the public hearing, where landowners voiced their concerns to the Board. We conclude the decision of the Board and the Commissioners that all land within the watershed would benefit from the project is neither arbitrary nor unreasonable and is supported by the evidence.

**B**

[¶ 18] The Board argues that the district court erred in ruling the Board's decision to confine the assessment district to the area of the watershed located in Pembina County after finding the entire watershed would be benefited by the project was arbitrary and inconsistent with the Board's findings of fact.

[¶ 19] The statutes governing water resource districts demonstrate a strong water management policy encouraging the assessment of all land that will be benefited by a water project. Section 61–16.1–15, N.D.C.C., provides, in part:

> Whenever a water resource board decides to acquire property or interests in property to construct, operate, alter, repair, or maintain a project with funds raised in whole or in part through special assessments, such *assessments shall be apportioned to and spread upon lands or premises benefited by the project in proportion to and in accordance with benefits accruing thereto.* The board shall assess the proportion of the cost of the project, or the part of the cost to be financed with funds raised through levy and collection of special assessments which any lot, piece, or parcel of land shall bear in proportion to the benefits accruing thereto and any county, city, or township which is benefited thereby. *In determining assessments the water resource board shall carry out to the maximum extent possible the water management policy of this chapter that upstream landowners must share with downstream landowners the responsibility to provide for the proper management of surface waters.*

(Emphasis added). *See also* N.D.C.C. § 61–16.1–09.1(1)[1] (providing the "board may finance the project in whole or in part with funds raised through the collection of a special assessment levied against the land and premises benefited by the project"); N.D.C.C. § 61–16.1–21 (providing "[b]enefited property belonging to counties, cities, school districts, park districts, and townships shall not be exempt from such assessment and political subdivisions whose property is so assessed shall provide for the payment of such assessments, installments thereof, and interest thereon, by the levy of taxes according to law"); N.D.C.C. § 61–16.1–26 (permitting reassessment of benefits after "a hearing for

---

1. Section 61–16.1–09.1, N.D.C.C., was substantially amended by the legislature in House Bill No. 1399, which was passed as an emergency measure and signed by the Governor on March 15, 2005. The amendment sets forth procedures governing situations in which a water resource board finds a project would benefit lands outside the water resource district's boundaries.

the purpose of determining the benefits of such project to each tract of land affected"); N.D.C.C. § 61–16.1–33 (authorizing proceedings for reassessment of lands originally assessed for the cost of a project "[w]henever a water resource board discovers or ascertains that the county, a township, or city therein, or that any tract, parcel, or piece of land is being benefited by a project and that the county or such township, municipality, tract, piece, or parcel of land was not included in the project area assessed for the cost of construction and maintenance of the project when established").

■ [¶ 20] The Board's findings of fact provide no explanation why the Board chose not to assess all of the land it had determined would be benefited by the project. Although the Board argues on appeal that the reason it chose not to assess landowners in the watershed located within Cavalier County was the "difficulty of dealing with another Water Resource District," a water resource board has a duty to cooperate with other water resource boards having a common river basin, *see* N.D.C.C. § 61–16.1–10, and two or more water resource districts may, by agreement, "jointly or cooperatively exercise any power which is authorized a board by this title." N.D.C.C. § 61–16.1–11(1). It does not appear from the evidence that the Board made any attempt to cooperate with another water resource board in assessing the benefited area.

[¶ 21] The Board provided no rational explanation to the court for assessing less than all of the land it found would be benefited by the project. We agree with the district court and conclude the Board's decision to confine the assessment area to the watershed located in Pembina County is arbitrary and inconsistent with its findings of fact.

C

■ [¶ 22] The district court ruled dissolution of the project was the proper remedy for the Board's improper assessment in this case. The Board argues that rather than dissolve the project, the court should have remanded the matter to the Board and the Commissioners for reassessment of the costs.

[¶ 23] We agree with the Board that the court's order dissolving the project is too harsh a remedy. We have concluded, as did the district court, that the Board's finding that all of the land within the watershed would be benefited by the project is not arbitrary or unreasonable and is supported by the evidence in the record. The project has been completed. Under these circumstances, the court's order dissolving the project is as logically inconsistent as the Board's assessing fewer than all of the landowners benefited by the project. We believe the proper remedy is to remand to the Board and the Commissioners for reassessment of the costs of the project in accordance with the law.

IV

[¶ 24] The landowners argue the Board's attorney and its chairman owned assessed land within Drain # 16 and therefore the Board's action should be nullified because of their personal interests in the matter.

[¶ 25] The Board's attorney had no voting rights on the Board. Consequently, the landowners' argument that the attorney's involvement should nullify the project is without merit. However, with regard to the Board's chairman, N.D.C.C. § 61–16–08.1 provides:

When a member of a water resource board has a conflict of interest in a specific issue before the board or is unable to fulfill the duties of a board member because of physical or mental illness,

the county commissioners may appoint a person to serve as an alternate to the disqualified board member. If the disqualification is for a conflict of interest, the alternate board member is to serve only for the purpose of deciding the particular issue causing the conflict. If the disqualification is for physical or mental illness, the alternate board member is to be appointed by the county commissioners only for one meeting at a time.

[¶ 26] Ownership of land benefited by the project qualifies as a conflict of interest covered by N.D.C.C. § 61–16–08.1. *See Larson v. Wells County Water Res. Bd.,* 385 N.W.2d 480, 483–84 (N.D.1986) (applying rule of necessity before N.D.C.C. § 61–16–08.1 became effective in situation in which chairman of water resource board leased land within area to be benefited by drain). The Board argues the chairman's participation should not nullify the proceedings, because there was a unanimous vote to approve the project and the assessment. The record shows that the resolution passed "by a vote of 4 for, 0 against, 1 absent." The chairman's presence was not necessary to constitute a quorum, and the chairman's vote was not determinative in establishing the project.

[¶ 27] In *Schumacher v. City of Bozeman,* 174 Mont. 519, 571 P.2d 1135, 1141–42 (1977), the Montana Supreme Court summarized the positions courts have taken when a disqualified member of a local governing body votes on a proposed project:

All courts that have considered the issue are agreed if a disqualified commissioner's vote was necessary to constitute the number required for passage, such a vote renders the entire proceeding void. Not all jurisdictions, however, are agreed as to what effect a vote by a disqualified commissioner has on the proceedings where his vote is not necessary to pass the issue. Some jurisdictions hold that such a vote has no effect on the validity of the proceedings. Others hold that such a proceeding is *void,* while still others hold that it is only *voidable.* 62 C.J.S. Municipal Corporations § 402.

. . . .

New York, New Jersey and Iowa hold that a vote cast by a commission member who is disqualified renders the *proceeding either void or voidable,* even though the disqualified member's vote was not needed to pass the issue. *Baker v. Marley,* 8 N.Y.2d 365, 208 N.Y.S.2d 449, 170 N.E.2d 900 (1960); *Aldom v. Borough of Roseland,* 42 N.J.Super. 495, 127 A.2d 190, 197 (App.Div.1956); *Wilson v. Iowa City,* Iowa 1969, 165 N.W.2d 813, 820. These decisions do not clearly distinguish between whether the action of the commission is *void or merely voidable.* Often such a decision is governed by statute.

Numerous reasons are given for declaring such action void or voidable. *Pyatt v. Mayor & Council of Borough of Dunellen,* 9 N.J. 548, 89 A.2d 1, 5 (1952), states:

"Public policy forbids the sustaining of municipal action founded upon the vote of a member of the municipal governing body in any matter before it which directly or immediately affects him individually."

Other courts hold that when a municipal body passes on resolutions and ordinances, it acts in a quasi-judicial manner. If any of the council members who participated as a quasi-judge were at the time disqualified by reason of private interest at variance with impartial performance of his public duty, *such proceedings are void. Aldom v. Borough of Roseland, supra; Pyatt v. Mayor &*

*Council of Borough of Dunellen, supra.* The bias of the interested person taints the action of the whole body. *Pyatt v. Mayor & Council of Borough of Dunellen, supra.* In *Piggott v. Borough of Hopewell,* 22 N.J.Super. 106, 91 A.2d 667, 670 (1952), this was found to be so for two reasons:

> " 'First, the participation of the disqualified member in the discussion may have influenced the opinion of the other members; and, secondly, such participation may cast suspicion on the impartiality of the decision. [Citing cases.] It being impossible to determine whether the virus of self-interest affected the result, it must needs be assumed that it dominated the body's deliberations, and that the judgment was its product.' "

The cases which have held the vote of a disqualified commissioner does not vitiate the proceedings where his vote was not needed to pass the issue have rejected the two factors considered in *Piggott.* See: *Singewald v. Minneapolis Gas Company,* 274 Minn. 556, 142 N.W.2d 739 (1966); *Eways v. Reading Parking Authority,* 385 Pa. 592, 124 A.2d 92 (1956); *Marshall v. Ellwood City Borough,* 189 Pa. 348, 41 A. 994 (1899). The rationale behind *Eways* and *Marshall* is that the "illegal" vote does not affect the "legal" votes. The *Marshall* court downplays the influence the "illegal" voter may have on the "legal" voters, particularly when there is a large group of voters and only one illegal voter.

[¶ 28] This Court has reached different results when assessing whether a disqualified person's participation renders proceedings void. *Compare Graves v. State Bd. of Law Exam'rs,* 2004 ND 64, ¶ 17, 677 N.W.2d 215 (looking to judicial and quasi-judicial rules and holding disqualification of board member was necessary because

her impartiality might reasonably be questioned and remanding for a new hearing before a different hearing panel), *and Sargent County Bank v. Wentworth,* 500 N.W.2d 862, 879–80 (N.D.1993) (reversing judgment and remanding for new trial before a different judge when first judge should have disqualified himself because a reasonable person could question his impartiality), *with State ex rel. Langer v. Kositzky,* 38 N.D. 616, 616, 166 N.W. 534, 534, Syll. ¶ 1 (1918) (holding "[t]he mere presence of, and participation by, a member of the Supreme Court in a case in which he may be disqualified on account of his interest in the result, does not render the proceedings and judgment of the court in that case void, where his presence is not necessary to constitute a quorum, and his vote does not determine the result"). In this case, two reasons persuade us to hold that the chairman's participation and vote did not nullify the proceedings.

■ [¶ 29] First, prior to the enactment of N.D.C.C. § 61–16–08.1 and other similar statutes, this Court had held "[t]he fact that one of the members of a board of drainage commissioners owns land in the drainage district that will be benefited by the drain will not disqualify such member from acting, nor render the proceedings in which he participated void or subject to attack by a court of equity." *State ex rel. Dorgan v. Fisk,* 15 N.D. 219, 219, 107 N.W. 191, 191, Syll. ¶ 3 (1906). This is merely a restatement of the majority rule that "the interest which one or all of the members of a body charged with the making or rectifying of assessments for a public improvement may have, arising from the fact of their ownership of property directly affected by the proposed improvement, does not create such a disqualification to sit or act in the premises as to render their action void, as not constituting due process of law." Annot., *Qualifi-*

*cation of owner of property affected by public improvement to act in making assessment,* 2 A.L.R. 1207, 1207–08 (1919). The reasons for the majority rule are summarized in *Simmons v. City of Moscow,* 111 Idaho 14, 720 P.2d 197, 201 (1986):

> Three principal considerations support this general rule. First, to the extent any special benefit accrues to property within a [local improvement district], there is a special assessment imposed to pay the cost thereof. To the extent a council member who owns property in an improvement district receives any benefit as the result of his or her vote in favor thereof, he or she must pay for it once assessments are levied. Second, the council member is not the sole beneficiary of the improvements. Rather, special benefits accrue to each and every property owner in the district. Third, disqualification of public officials who own property in a proposed [local improvement district] would often have the effect of prohibiting a governing body from performing its statutory functions because of the absence of a necessary quorum or majority. The construction of beneficial and desirable or necessary public improvements would thereby be inhibited.

[¶ 30] Second, N.D.C.C. § 61–16–08.1 states that county commissioners "may" appoint a person to serve as an alternate in the case of a conflict of interest, indicating a discretionary rather than mandatory duty, *see City of Devils Lake v. Corrigan,* 1999 ND 16, ¶ 12, 589 N.W.2d 579, and does not address the consequences attendant to improper participation by a disqualified board member. The legislative history of N.D.C.C. § 61–16–08.1 indicates the disqualification feature of the statute was intended as an accommodation for water resource board members to enable them to disqualify themselves in situations where they did not feel "comfortable" voting on a

matter. *Hearing on H.B. 1235 Before the Senate Natural Resources Comm.,* 49th N.D. Legis. Sess. (Feb. 15, 1985) (testimony of Rep. L. Hanson and Rep. Melby). We do not believe the legislature envisioned nullification of a proceeding where a disqualified board member casts a nondeterminative vote. *Id.* (testimony of Sen. Wogsland) ("He also indicated that he does not feel an entire board would be allowed to disqualify themselves. He does not think that county commissioners would let that happen").

[¶ 31] The chairman's presence was not necessary to constitute a quorum, and the chairman's vote was not determinative in establishing the project. *Cf. Stahl v. Board of Supervisors of Ringgold County,* 187 Iowa 1342, 175 N.W. 772, 776–77 (Iowa 1920) (reversing establishment of drainage district when disqualified board member cast deciding vote). We therefore conclude the Board chairman's participation does not require dissolution or nullification of the project. On remand, Board members should consider the provisions of N.D.C.C. § 61–16–08.1.

V

[¶ 32] The Board argues the district court had no authority to award the landowners their attorney fees from the Board.

[¶ 33] Successful litigants are not entitled to attorney fees unless authorized by contract or statute. *E.g., Danzl v. Heidinger,* 2004 ND 74, ¶ 6, 677 N.W.2d 924. The landowners rely on N.D.C.C. § 11–11–39 as authorizing attorney fees from the Board in this case. Section 11–11–39, N.D.C.C., provides, in relevant part:

> An appeal may be taken to the district court from any decision of the board of county commissioners by any aggrieved person.... The district court may at its

discretion award costs and reasonable attorney's fees to appellants when three or more aggrieved persons have joined in an appeal from a decision of the board of county commissioners and the court rules in favor of the appellants.

[¶ 34] Although this statute authorizes an award of attorney fees from a board of county commissioners, it does not authorize an award of attorney fees from a water resource board. The landowners have cited no other authority allowing an award of attorney fees against the Board, and we have found none. Therefore, the award of attorney fees to the landowners is reversed insofar as it is assessed against the Board.

## VI

[¶ 35] We affirm in part, reverse in part, vacate the assessment, and remand the case to the Board for reassessment of the costs of the project.

[¶ 36] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

[¶ 37] The Honorable William A. Neumann, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.