BABYAK ET AL., APPELLEES, *v.* ALTEN, BLDG. INSP., ET AL., APPELLANTS; GATES, MAYOR, ET AL., APPELLEES.
BABYAK ET AL., APPELLEES, *v.* ALTEN, BLDG. INSP., ET AL., APPELLEES; LORAIN TELEPHONE CO., APPELLANT.

(Nos. 1409 and 1410—Decided April 30, 1958.)

*Mr. Virgil C. Burgett* and *Mr. Robert Jenson,* for appellees Harry Babyak and Dolores Babyak.

*Mr. A. H. West,* for appellants in case No. 1409 and appellees Stephen Alten, Building Inspector, and village of Avon in case No. 1410.

*Mr. Dan K. Cook,* for appellee Lorain Telephone Company in case No. 1409 and appellant in case No. 1410.

HUNSICKER, P. J. There are presented to this court two appeals on questions of law and fact. The cases arise out of one trial held in the Common Pleas Court of Lorain County, Ohio.

Harry Babyak and Dolores Babyak, husband and wife, as real property owners, and hence taxpayers of the village of Avon, Lorain County, Ohio, brought an action to enjoin the mayor and the building inspector of the village from issuing a building permit "for the construction of a telephone exchange building in any class 'B' residence district."

The Lorain Telephone Company, upon its request, was made a party to the action. It is the appellant in case No. 1410, which case is considered along with case No. 1409. Case No. 1409 is the appeal herein by the village of Avon and the building inspector of such village.

These appeals are from a decision granting the injunction, and concern the validity of ordinance No. 475, which sought to amend the original village zoning ordinance, known as ordinance No. 301.

On August 14, 1957, at a regular meeting of the village council, all six members thereof were present. Ordinance No. 475 was submitted for its third and final reading. This ordinance, if properly enacted, would permit the Lorain Telephone Company to erect a telephone exchange building in a former "class B" residence district.

Ordinance No. 475 was given its final reading; and thereafter the following action, as shown by the minutes of that meeting, took place with respect to this ordinance:

"A motion was offered by Mr. Wagar and seconded by Mr. Tomlin to adopt ordinance 475 as read. The vote was: Mr. Cosner, not voting; Mr. Fitch, no; Mr. Lanzendorfer, aye; Mr. Pickering, no; Mr. Tomlin, aye; and Mr. Wagar, aye. Mayor Gates referred the question as to the voting of council to Solicitor West. Mr. West held up his final decision until he checked further on the matter.

"* * *

"Solicitor West said his opinion was that ordinance 475 had passed as majority voting were in favor of it. He said it would take 30 days, however, for final passage and he would make an additional case study of the matter and report at the next meeting."

The minutes of the next meeting of council, held on September 11, 1957, show that the following action took place, with reference to ordinance No. 475:

"Mayor Gates announced that Solicitor West's opinion was that the voting on ordinance No. 475 at the August 14, 1957, meeting had resulted in a tie vote. The mayor then added that he would exercise his right to vote and voted aye. Mayor Gates then declared ordinance No. 475 adopted."

There is no serious challenge to any other procedural matters concerning the action taken with respect to this ordinance. The question before this court is: Was ordinance No. 475 of the village of Avon lawfully adopted?

Section 731.17, Revised Code, in the part pertinent to this inquiry, says:

"No ordinance shall be passed without the concurrence of a majority of all members elected to the legislative authority."

Former General Code Section 4224, as to this portion of the statute, on "ordinances and resolutions; how adopted," said:

"No ordinance shall be passed by council without the concurrence of a majority of all members elected thereto."

We thus see that a change in the wording of the statute has substituted the phrase "legislative authority" for the word "thereto." The phrase "legislative authority" is also found in Section 733.24, Revised Code, which says:

"The mayor of a village shall be elected for a term of two years, commencing on the first day of January next after his election. He shall be an elector of the village. Such mayor shall be the chief conservator of the peace therein and shall have the powers and duties provided by law . He shall be the president of the legislative authority and shall preside at all regular and special meetings thereof, but shall have no vote except in case of a tie."

This same language, with respect to a vote in case of a tie, is found in the statute concerning the powers of the president of council of a city. Section 733.09, Revised Code.

This section (Section 733.24, Revised Code) designates the mayor as president of the legislative authority. He is elected to that position as a part of the duties which devolve upon the office of mayor, but the designation of president of the legislative authority is specific. He is a part of the legislative authority as definitely as a member of council, but with a provision restricting his vote.

His vote as a member of such legislative authority can only be exercised in case of a tie. No distinction is provided by statute as to what kind of legislative action may be voted on in case of a tie, so we must conclude that it means any tie, that is, a tie vote with respect to a resolution or an ordinance. It makes no difference what the nature of the tie is: a permanent legislative matter or an organizational matter. *State, ex rel. Roberts,* v. *Snyder, Aud.,* 149 Ohio St., 333, 336, 78 N. E. (2d), 716. See also: 43 A. L. R. (2d), 733 *et seq.*

Does the fact that the mayor, as president of the legislative authority, voted to break the tie at the next succeeding council

meeting, after the vote of the council members, affect the validity of this ordinance No. 475?

It is to be noted that, although the mayor, as president of council in the instant case, did not make a formal pronouncement of his vote, he did state that the ordinance had passed, and he did affix his signature to the ordinance as adopted on August 14, 1957. See: *Small* v. *Orne*, 79 Maine, 78, 8 A., 152.

No attempt was made by the members of council to change the vote of August 14, 1957. No attempt was made, at any time, to repeal, rescind or change the action taken at that time. There was a delay of some weeks before the mayor announced formally his vote, pending a legal opinion by the village solicitor on the situation that then confronted the legislative authority.

We find no reported cases covering the situation where there was a delay in voting, but we are of the opinion that the fact that a delay, in voting, by the mayor, as president of council, pending a clarification of the legal position arising by reason of a nonvoting member of council, there being no intervening changes in the status of the legislation or of the rights of other persons, did not make such vote of the mayor ineffective. The delay was not a captious or frivolous matter, and it was not of unreasonable duration under the conditions which arose, but the delay occurred by reason of circumstances arising out of the situation itself.

This delay, under the circumstances herein, did not invalidate or make ineffective the vote of the mayor to break any tie which might have existed. The fact that the mayor signed the ordinance, as passed at the August 14, 1957, meeting, although not a vote to break a tie, was an indication of his vote in the affirmative for such legislation.

The mayor, of course, did formally declare at the meeting of September 11, 1957 (the next meeting of the village council, subsequent to the August 14, 1957, meeting), that he cast his vote for the measure, thereby breaking a tie, if the vote of August 14, 1957, did, in fact, result in a tie. The ordinance was thereafter posted, as required by law (Section 731.25, Revised Code). The ordinance had also been posted after the vote taken on the ordinance on August 14, 1957, thereby giving notice of its enactment.

There is no question raised here as to this procedure, if the ordinance was properly enacted by a vote of the legislative authority.

Although we determine, in the above discussion of the problem herein, that the legislation was originally validly enacted and that our conclusion has a sound and tenable basis for the result reached, we believe there is another and effective reason why the legislation herein should be declared valid. We shall therefore turn to a discussion of the additional reason why the ordinance herein should be declared lawfully enacted.

One of the members of the legislative authority did not vote, although he was present at the meeting of August 14, 1957, and his presence was recorded by a statement in the minutes that he was not voting. He voted neither "yea" nor "nay," as is required for a record of the vote of the legislative authority. (Section 731.17, Revised Code.)

What, then, is the effect on this legislation of the refusal of this one member to vote?

In the case of *State, ex rel. Shinnich, Jr.,* v. *Green,* 37 Ohio St., 227, the court said that the legal effect of refusing to vote is an acquiescence in the choice of those who do vote. In that case, the vote was taken on an organizational matter. We find no Ohio case which says that this same rule would be followed in other than organizational matters. We find no Ohio authority covering our specific question. See: *State, ex rel. Roberts,* v. *Snyder, Aud., supra.*

Other jurisdictions have had this problem before them on organizational matters, as well as on matters of a permanent nature such as franchises and damage settlements. *Marlar* v. *Board of Supervisors,* 185 Miss., 120, 187 So., 879, employment of truck driver. *Napier* v. *Gay,* 264 Ky., 359, 94 S. W. (2d), 682, settlement of condemnation proceedings by payment to daughters of member of council. *Rushville Gas Co.* v. *City of Rushville,* 121 Ind., 206, 23 N. E., 72, 16 Am. St. Rep., 388, 6 L. R. A., 315, purchase of an electric light plant. The Indiana statutes presently provide that "it shall require a majority vote of all the members-elect to pass an ordinance." 9 Burns Indiana Statutes, Part 1, Chapter 14, Section 48-1402. *Launtz* v. *People, ex rel. Sullivan,* 113 Ill., 137, 55 Am. Rep., 405, election of city

officer. *Kozusko* v. *Garretson*, 102 N. J. Law, 508, 134 A., 614, amendment of rules by council. *State, ex rel. Rea*, v. *Etheridge* (Tex. Comm. App.), 32 S. W. (2d), 828, 831, taxing ordinance—declared invalid by the court on other grounds. *City of Springfield* v. *Haydon*, 216 Ky., 483, 288 S. W., 337, ordinance to improve a street. *Martin* v. *Ballinger, City Clerk*, 25 Cal. App. (2d), 435, 77 P. (2d), 888, election by council of a member to fill a vacancy.

See also: 2 Dillon on Municipal Corporations (5 Ed.), 851, Section 527; 4 McQuillin on Municipal Corporations (3 Ed.), 494, Section 13.32; 43 A. L. R. (2d), 723 *et seq.*

We thus see that there is a general rule in those jurisdictions that have passed on the situation such as we have herein. That rule is that one who is present at a council meeting, but who does not register a negative vote on a matter then being voted upon, shall be held to have acquiesced in the action taken by the majority of those who do vote. If we adopt such a general rule in Ohio, we must hold that the legislation sought to be declared invalid herein was properly enacted at the August 14th meeting of the village council.

The statute concerning adoption of ordinances and resolutions (Section 731.17, Revised Code) requires that "on the passage of each ordinance or resolution the vote shall be taken by yeas and nays and entered upon the journal," and that "no ordinance shall be passed without the concurrence of a majority of all members elected to the legislative authority."

According to Webster's New International Dictionary (2 Ed.), "vote" means: "2. A wish, choice, or opinion, of a person or a body of persons, expressed in some received and authorized way, as by a ballot or viva voce; the formal expression of a wish, will, or choice * * *."

"Concurrence" means: "1. Act of concurring; a meeting or coming together; union; conjunction * * *. 2. Agreement or union in action * * *. 3. A meeting of minds; agreement in opinion; union in design; consent * * *."

"Majority" means: "2. * * * the number greater than half * * *."

If to obtain the passage of the ordinance herein some for-

mal expression of a choice must be made by a number greater than half of the legislative authority, then the ordinance herein was not enacted according to the requirement of Section 731.17, Revised Code.

To adopt such a rule would result in some instances in inaction and one-man rule by a nonacting member of the council. Such nonvoting member should be recorded either as "yea" or "nay," for there is no provision in the statute to record or enter the inaction of a member of council who attends meetings and then refuses to vote. A councilman is elected for the purpose of expressing an opinion. Action, and not inaction, is a duty that he assumes with the office.

We therefore conclude that the rule known as the common-law rule is a proper and efficient rule to adopt, in order that municipal business shall be conducted with a proper regard to the wishes of its citizens. This common-law rule may be stated to be that the legal effect of refusing to vote is an acquiescence in the action taken by the majority of those who do vote.

In the instant cases, we find that the legislation (ordinance No. 475) amending ordinance 301 was properly and lawfully enacted; and that such legislation is a valid enactment of the village of Avon.

Decrees may be entered in conformity with this opinion.

*Decrees for appellants.*

Doyle and Stevens, JJ., concur.