**Janice DANROTH, Plaintiff and Appellant,**

v.

**MANDAREE PUBLIC SCHOOL DISTRICT NO. 36, a public corporation, Defendant and Appellee.**

**Civ. No. 10101.**

Supreme Court of North Dakota.

June 10, 1982.

Chapman & Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman, Bismarck.

Freed, Dynes, Reichert & Buresh, Dickinson, for defendant and appellee; argued by George T. Dynes, Dickinson.

SAND, Justice.

Janice Danroth [hereinafter Danroth] appealed from a district court judgment and an order denying her motion for a new trial.

Danroth was employed by the Mandaree Public School District No. 36 [Board] as a school teacher. On 17 March 1981 the Board held an executive closed session in which the Board discussed school personnel. Danroth was present at the beginning of the meeting but was asked to leave when the Board went into its closed session. At the closed session, the Board passed out teacher evaluations which were read and discussed; however, nonrenewals of teachers were not considered by the Board at the closed meeting. The Board, at a public meeting held on 24 March 1981, which was not attended by Danroth, considered and decided not to renew Danroth and gave her notice of the contemplated nonrenewal by letter dated 25 March 1981.

Danroth appealed to the district court, which, after a bench trial, issued its find-

ings of fact, conclusions of law, order for judgment and judgment on 16 July 1981. The district court held that the executive closed session on 17 March 1981 was in violation of North Dakota Century Code § 44–04–19.[1] The district court found that the nonrenewal process was invalid because the formal determination and action to non-renew was based upon discussions at the earlier invalid meeting. The judgment also provided for the Board to reconsider its action and because the dates specified under NDCC § 15–47–27 and § 15–47–38 could no longer be met, the court set dates upon which certain matters were to be considered and resolved. The court set 24 July 1981 as the notice date for mailing of contemplated nonrenewal if, after reconsideration at an open meeting, the Board determined that Danroth should be sent a notice of contemplated nonrenewal. The court also set 4 August 1981 as the nonrenewal hearing date if a notice of contemplated nonrenewal was given. The court also enjoined the Board from replacing Danroth until those conditions were satisfied.

The Board reconsidered the contemplated nonrenewal at open meetings held on 21 and 22 July 1981, and sent the required notice of contemplated nonrenewal setting a hearing date for 4 August 1981. A full hearing was held on 4 August; however, neither Danroth nor her representatives attended. After the hearing, the Board adhered to its decision to nonrenew Danroth's contract.

Danroth moved for a new trial on the grounds that she was not accorded her statutory rights and given a continuance upon request. See NDCC § 15–47–38. No provisions for a continuance were provided for

under the guidelines set up by the district court, and Danroth's motion for a new trial was denied. She appealed to this Court.

Danroth presented the following issues for review:

## "I.

"Where school board has violated the open meeting law, is it a sufficient remedy to permit school board to go back and redo the procedure and then non-renew the teacher a second time?

## "II.

"Where the Court orders a new hearing after violation of the open meeting law, can the teacher be denied rights afforded to her under the nonrenewal statute, specifically the right to request a continuance of not to exceed seven days?

## "III.

"Where the wife of one of the members of the school board was one of the principal objectors to the teacher and had threatened to withdraw her child from the school if the teacher was retained, can such board member continue to act as a member of the board relative to the contemplated nonrenewal of that teacher?"[2]

Danroth contended that because the Board, on 17 March 1981, had a closed meeting in violation of NDCC § 44–04–19 at which meeting teacher evaluations were discussed and the Board at a subsequent hearing on 24 March 1981 decided to nonrenew her teaching contract, such action was invalid and the court erred in following the

---

1. North Dakota Century Code § 44–04–19 provides as follows:

   "Except as otherwise specifically provided by law, all meetings of public or governmental bodies, boards, bureaus, commissions, or agencies of the state or any political subdivision of this state, or organizations or agencies supported in whole or in part by public funds, or expending public funds, shall be open to the public. The governing members of the above bodies, boards, commissions, agencies, or organizations meeting in viola-

tion of this section shall be guilty of an infraction for a first offense. A public or governmental body, board, bureau, commission, or agency meets in violation of this section if it refuses any person or persons access to such meeting, unless such refusal, implicitly or explicitly communicated, is due to a lack of physical space in the meeting room for the person or persons seeking access."

2. Danroth does not raise an issue as to the merits of her nonrenewal.

remedy fashioned by this Court in *Peters v. Bowman Public School District No. 1*, 231 N.W.2d 817 (N.D.1975), by permitting the Board to go through the entire proceedings again according to a schedule set up by the court. She contended that *Peters* brought about the right result but gave the wrong remedy. She further asserted that she should be entitled to either reinstatement or damages because of the violation of NDCC § 44-04-19.

The Board contended that discussions at the 17 March 1981 meeting were of no significance to the nonrenewal of Danroth, and in essence, that there was no violation of NDCC § 44-04-19. But be that as it may, the court concluded:

"... from the evidence that to all intents and purposes the nonrenewal of the teacher had been determined as a result of the secret meeting held by the Board on the 17th day of March and that the meeting of March 24 was merely a pro forma ratification of the significant discussions had at the secret meeting."

■ Evidence to support this finding is in the record and after applying Rule 52(a), North Dakota Rules of Civil Procedure, the finding is not clearly erroneous.

With reference to the remedies available under NDCC § 44-04-19 for not complying with the statutory provisions we note that the Legislature provided that:

"... The governing members of the above bodies, boards, commissions, agencies, or organizations meeting in violation of this section shall be guilty of an infraction for a first offense...."

North Dakota Century Code § 12.1-32-01 provides that the person guilty of an infraction for the first offense may be subject to a fine of $500.00. This provision also implies that the second offense may be treated as a class B misdemeanor. This suggests that the Legislature has, to a degree determined and provided for one remedy for violations of NDCC § 44-04-19.

In *Peters v. Bowman Public School District No. 1, supra*, we added a judicial remedy.

In *Peters v. Bowman Public School District No. 1, supra*, we reversed a factually similar case and remanded with instructions to the district court to direct the school district to reconsider the action whereby it nonrenewed Peters' contract. Additionally, because the dates specified for procedures under NDCC §§ 15-47-27 and 15-47-38(5) could not be met, the district court was instructed to specify reasonable dates in lieu of those provided in the statute.

Counsel is now suggesting the remedy provided in that case is no remedy at all and that the correct remedy should be reinstatement or damages.

■ Danroth's argument suggests that the violation of the open meeting law, NDCC § 44-04-19, should be treated or equated with standards equal or comparable to the double jeopardy concept or the exclusionary rule which apply in criminal cases. What if the Board hired a teacher at a closed meeting? Should that teacher be barred from ever being hired by the school board thereafter? Should the Board decide to give raises at a closed meeting, would the Board be prohibited from thereafter ever granting raises? If the Board at a closed meeting agreed to a proposal of the teachers' negotiator in a dispute, would the Board be barred from ever considering that question later? These hypothetical questions clearly illustrate that this type of concept cannot and should not be employed and, for that matter, will not provide or further the ends of justice.

We see no reason to overturn the rule of law announced in *Peters v. Bowman Public School District No. 1, supra*, and because the district court followed that rule, we do not believe the district court erred.

The next issue raised by Danroth is that the trial court's judgment did not provide for the allowance of certain statutory rights, including the right to a continuance not to exceed seven days. NDCC § 15-47-38. Danroth asserted that under the procedure set up by the court, no allowance was made for a continuance, and, in fact, a continuance was denied her.

We note that the trial court's judgment provided a time schedule for the procedure and concluded with the following:

"That in the alternative, the Court may approve other resolutions of law-suit, provided that it is based upon agreement of the parties themselves."

Danroth's request for a continuance was only informally directed to the Board and the record does not reflect that such a request was directed to the court for its approval. Based on this, we believe Danroth's claim is not supported by the facts nor the procedure set by the district court.

Danroth also contended that due process of law and NDCC § 15–47–38 require a fair and impartial trial, and that one of the Board members was not impartial because his wife was a principal objector to Danroth and therefore Danroth did not receive a fair and proper hearing.

The statutes relating to school boards do not provide for a procedure to be followed in the event a board member has reason to refrain from participating in the matter before the board because of either personal or conflicting interests. This is also true of many other boards or agencies. However, in the judiciary a change of venue and a change of judge is provided for by statute and the procedures to be employed in a change of judge or change of venue are carefully set out by statute or rules.

Case law in this State has been established by *Northwestern Bell Telephone Co. v. Board of Commissioners of the City of Fargo*, 211 N.W.2d 399 (N.D.1973), wherein this Court ruled that whenever a member of the city governing body passes the vote, the vote will be counted with the majority as either for or against, depending upon the vote cast by the majority. In *Northwestern Bell Telephone Co. v. Board of Commissioners, supra* at 402, this Court observed:

"... there is no provision in our statute for passing votes, and an inference can be drawn that the member must vote."

The Court then approvingly quoted from *Babyak v. Alten*, 106 Ohio App. 191, 154 N.E.2d 14 (1958):

"To adopt such a rule [the one here advocated by Bell] would result in some instances in inaction and one-man rule by a nonacting member of the council. Such nonvoting member should be recorded either as yea or nay for there is no provision in the statute to record or enter the inaction of a member of council who attends meetings and then refuses to vote. A councilman is elected for the purpose of expressing an opinion. Action and not inaction is a duty that he assumes with the office." *Northwestern Bell Telephone Co. v. Board of Commissioners of the City of Fargo, supra* at 402.

If we were to apply the same rule to the school boards, and we are not aware of any legal reason why we should not, the result in this instance would have been the same because the decision to nonrenew was unanimous.

In *First American Bank & Trust Co. v. Ellwein*, 221 N.W.2d 509, 514–515 (N.D. 1974), the Court observed:

"Here, the statute does not provide for the disqualification and temporary replacement of board members or for a substitute tribunal. When challenged, must a board member or the entire board refuse to act, leaving no substitute board and providing no forum for a hearing on the alleged violations of law? The courts have treated this question as presenting a comparison of wrongs or a choice of two evils. When confronted with this problem, the courts have relied upon the so-called 'Rule of Necessity' to require otherwise disqualified officers to serve when no provision has been made for a substitute tribunal."

1 Am.Jur.2d, *Administrative Law*, § 66, p. 862, states:

"There is an exception, based upon necessity, to the rule of disqualification of an administrative officer. Disqualification will not be permitted to destroy the only tribunal with power in the premises. An officer, otherwise disqualified may still act, if his failure to act would necessarily result in a failure of justice. Thus,

an officer exercising judicial or quasi-judicial functions may act in a proceeding wherein he is disqualified by interest, relationship or the like if his jurisdiction is exclusive and there is no legal provision for calling in a substitute so that his refusal to act would absolutely prevent a determination of the proceeding."

We are not aware of any legal reason why these principles as announced in *Northwestern Bell Telephone Co., supra; First American Bank, supra*; and 1 Am. Jur.2d should not apply to the facts of this case.[3] We have previously noted that there are no statutes which provide for a member of the school board to disqualify himself and to call in another person to sit in place of the member disqualified.

We also take notice that in many school board elections the persons seeking the office of school board announces that he or she has children, implying that because of this fact they are well qualified and will have a strong interest in school matters. How can we then justifiably say that whenever a school board member has a personal interest because of a child or children attending school, the school board member should disqualify himself or herself?

The school board members have a statutory responsibility to operate the public school system. This includes providing the necessary facilities, fixing compensation for all the employees, including the hiring, firing and nonrenewal of teachers, depending on the circumstances. In carrying out this responsibility the Board must, among other things, be fair and balance the interests and rights of both the teachers and the students. If a teacher is not performing properly, the Board has the responsibility to employ whatever legal methods are necessary to correct the situation. If, under the present set of facts, assuming the teacher was not performing properly to the detri-

ment of the students, the Board was not only justified to not renew the teacher but was required to do so. But if, in the process of doing this, the Board violated the law then should the students bear the brunt of the mistake made by the Board by either not allowing the nonrenewal to stand or to award damages to the teacher? In either event, the students indirectly would suffer the consequences. We do not believe the law contemplates such action. To assure the mistake will not be repeated, the law does provide for a fine of $500 for the first offense. The proposal suggested by Danroth would be favorable to the teacher by either declaring that the nonrenewal was not effected or by awarding damages to the teacher. Either of these procedures would overlook the purpose and objective of the school system and that is to provide a good education to all students. Such a proposed procedure would not act as a deterrent to the school board—nor will it be to the best interest of the school system.

For reasons stated in this opinion the judgment and order of the district court are affirmed.

ERICKSTAD, C. J., and PEDERSON and PAULSON, JJ., concur.

VANDE WALLE, Justice, dissenting.

I would not reach the last two issues because I believe the first issue is dispositive of the case. Section 44–04–19, N.D. C.C., as well as Section 5 of Article XI of the North Dakota Constitution require meetings of public bodies, including school boards, to be open to the public except as otherwise provided by law. It is conceded that no statute exists which permits a school board to meet in executive session to discuss the contemplated nonrenewal of a teacher's contract. In *Peters v. Bowman Pub. Sch. Dist. No. 1*, 231 N.W.2d 817 (N.D.

---

3. As a point of interest, § 21 of Article IV, Legislative Branch of Government, provides as follows:

"Any member who has a personal or private interest in any measure or bill proposed or pending before the legislative assembly, shall disclose the fact to the house of which he is a member, and shall not vote thereon without the consent of the house."

Pursuant to Chapter 666 of the 1981 Session Laws, Section 21 of Article IV was submitted to the electorate at the 8 June 82 primary election. According to unofficial returns it was defeated.

1975), this court held that official action taken at an illegal meeting is void. Whether or not that principle was well established before that time, *Peters* firmly established the rule that executive sessions at which a discussion of the contemplated nonrenewal of a teacher's contract takes place are illegal. The trial court recognized this principle and found that the nonrenewal of the teacher's contract had been determined as a result of the secret meeting held by the school board on March 17 and that the meeting of March 24 was merely a pro forma ratification of the significant discussion had at the secret meeting. I agree with those findings and conclusions. The trial court proceeded to apply the remedy ordered by this court in *Peters*, i.e., that the school board should reconsider its action in determining to not renew Danroth's contract at an open meeting; that if a decision to not renew was reached that Danroth be given notice of opportunity for hearing; and that because the dates specified for these proceedings under Sections 15–47–27 and 15–47–38 could not be met, the trial court established a new timetable.

Notwithstanding this court's decision in *Peters*, I cannot agree that the school board has an opportunity, at this late date, to remedy the failure to give notice by April 1 as required by Section 15–47–38(5). Because the March 17 meeting was invalid and because the trial court determined that the motion made at the March 24 meeting to send a notice of contemplated nonrenewal was a result of an illegal meeting of the school board, it follows that the notice itself was invalid. The trial court so determined. However, Section 15–47–38 requires that a notice of contemplated nonrenewal be sent by April 1. If the notice is invalid, as the trial court determined, it is apparent that no valid notice was sent by April 1 as required by statute.

The remedy fashioned by this court in *Peters* may have been appropriate under the circumstances existing at that time, i.e., the issue of the legality of action taken at an open meeting as a result of discussion at an executive session had not previously been determined. However, since the *Pe-*

*ters* decision it is clear that an executive session with discussion followed by an open meeting at which pro forma action is taken is not permissible. I therefore do not agree that the remedy fashioned by this court in *Peters* should be extended beyond that case. Furthermore, the decision in *Peters* devotes little discussion to whether or not the remedy fashioned by the court was appropriate and cites no authority in support of the remedy.

This court has made it abundantly clear that failure to give the required statutory notice of contemplated nonrenewal constitutes an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the current year. *Pollock v. McKenzie County Public School Dist. # 1*, 221 N.W.2d 521 (N.D.1974) [letter from the school board stating "it is the intent" of the board not to offer a contract constituted notice of final decision to not renew teacher's contract]; *Henley v. Fingal Public School District # 1*, 219 N.W.2d 106 (N.D.1974) [board sent final notice of nonrenewal rather than notice of contemplated nonrenewal]; *Huso v. Bismarck Public School Board*, 219 N.W.2d 100 (N.D.1974) [school board failed to give notice of contemplated nonrenewal but teacher failed to give notice of acceptance of statutory offer created by failure of the board to give notice]. If the notice of contemplated nonrenewal is invalid because the board met in executive session contrary to statute the board should be given no greater opportunity to correct its action than it would have if it had failed to send the required notice or had worded the notice improperly. As noted above, the previous decisions of this court clearly indicate that failure to give a proper notice of contemplated nonrenewal by the statutory date is fatal.

The open-meeting requirement and the requirement for notice of contemplated nonrenewal by April 1 are meaningless if a school board can ignore them and, if the teacher objects, the school board is permitted to merely retrace its steps with no sanctions. In this instance the school board

was informed by a representative of the North Dakota Education Association that an executive session was contrary to law. The school board, although not required to accept the advice of the Association, did not attempt to verify the information with its legal counsel. In view of the decision in *Peters* that notices sent as a result of an illegal executive session are invalid and in view of the information given by the North Dakota Education Association, there can be little excuse for what took place.

I agree that a board which has met in a closed meeting, contrary to statute, is not forever barred from thereafter renewing that action at an open meeting. However, if the action must be taken by a specified statutory date the open meeting must be held before that date. In this instance a valid notice of contemplated nonrenewal was not given to Danroth by the April 1 deadline specified in Section 15–47–38(5). Danroth accepted the statutory offer of a contract by the school board created as a result of the board's failure to give the proper notice. I would reverse the decision of the trial court and direct that judgment be entered for Danroth in the amount of her contract for the 1980–1981 school year.