**Leon OPDAHL, Petitioner and Appellant,**

v.

**ZEELAND PUBLIC SCHOOL DISTRICT NO. 4, Respondent and Appellee.**

Civ. No. 930233.

Supreme Court of North Dakota.

Feb. 23, 1994.

Michael Geiermann of Rolfson Schulz Lervick Law Offices, Bismarck, for petitioner and appellant.

Gary R. Thune of Pearce & Durick, and Dean F. Bard, Bismarck, for respondent and appellee.

SANDSTROM, Justice.

Leon Opdahl appeals from a judgment dismissing his petition for a writ of mandamus to require the school board for the Zeeland Public School District (Board) to issue him teaching and principal contracts for the 1993–94 school year. We hold the Board did not abuse its discretion in not renewing Opdahl's teaching and principal contracts, and the district court did not abuse its discretion in refusing to issue a writ of mandamus.

I

During the 1992–93 school year, Opdahl was employed by Zeeland as an elementary teacher and an elementary principal. He had been a teacher at Zeeland for over 20 years and a principal for 13 years. The Board hired a new superintendent, Edward Wickre, for the 1992–93 school year, and according to Wickre, Opdahl's performance as a principal and as a teacher was unsatisfactory. The Board notified Opdahl of contemplated nonrenewal of both contracts for the 1993–94 school year. At a nonrenewal hearing, the Board heard evidence about Opdahl's performance and ability as both a principal and a teacher, and unanimously voted not to renew both contracts.

Opdahl sued the school district, seeking a writ of mandamus to require the Board to offer him teaching and principal contracts for the 1993–94 school year. Opdahl alleged the Board was biased against him, the Board's reasons for nonrenewal violated his constitutional rights, the Board relied upon erroneous legal advice in nonrenewing both contracts, and the administration failed to substantiate reasons for nonrenewal of both contracts. The district court concluded the Board had not acted arbitrarily, capriciously, or unreasonably in not renewing both contracts and Opdahl had not established a clear legal right to either contract. The court dismissed Opdahl's petition for a writ of mandamus, and he appealed.

II

A petitioner seeking a writ of mandamus must show no plain, speedy, and adequate remedy in the ordinary course of law and a clear legal right to performance of the act sought to be compelled. N.D.C.C. §§ 32–34–01; 32–34–02; *Wenman v. Center Bd. of Valley City Multi–Dist. Vocational Center*, 471 N.W.2d 461 (N.D.1991). Teachers and principals have a clear legal right to compliance with the statutory procedures for nonrenewal, and mandamus is proper if those procedures have not been followed. *Wenman; Coles v. Glenburn Public School District No. 26*, 436 N.W.2d 262 (N.D.1989). *Compare Bradley v. Beach Public School District No. 3*, 427 N.W.2d 352 (N.D.1988); *Feldhusen v. Beach Public School District No. 3*, 423 N.W.2d 155 (N.D.1988). We review a trial court's denial of a writ of mandamus under the abuse-of-discretion standard.

*Wenman.* A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Wall v. Penn. Life Ins. Co.,* 274 N.W.2d 208 (N.D.1979).

▪ Additionally, judicial review of a school board's substantive reasons for nonrenewal of a teaching or principal contract is limited to whether the board abused its discretion in making the nonrenewal decision. *Belcourt v. Fort Totten Public School Dist. No. 30,* 454 N.W.2d 703 (N.D.1990); *Dobervich v. Central Cass Public School Dist. No. 17,* 302 N.W.2d 745 (N.D.1981). In *Dobervich,* 302 N.W.2d at 751–52, this Court explained:

> "Because there is no statute providing for an appeal from a decision of the board to not renew a teacher's contract nor any statutory standard by which the evidence submitted at the nonrenewal hearing is to be measured, and because the trial court may not substitute its judgment for that of the board, we conclude that, except for procedural matters, the trial court's review of the reasons given for nonrenewal of the teacher's contract and the evidence submitted at the hearing pertaining thereto is limited to: (1) determining whether or not the reasons given are in accordance with the statutory provisions, i.e., they are not frivolous or arbitrary but, rather, are related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in teaching staff; and (2) determining—if those reasons are legally sufficient—whether or not under the facts of the case the school board has abused its discretion in reaching the nonrenewal decision. Such a review will, in our estimation, permit the teacher his day in court and, at the same time, will not unduly involve the courts in the administration of the school system." [Footnotes omitted.]

We review the district court's denial of Opdahl's petition for a writ of mandamus to compel the Board to offer him teaching and principal contracts within that framework.

### III

Opdahl asserts the Board denied him a fair nonrenewal hearing and abused its discretion in refusing to allow him to present evidence of bias by *all* of the Board members. Opdahl initially moved to dismiss the nonrenewal proceeding, asserting "this entire board is biased, that this entire board has already made up its mind, that it is impossible for Leon Opdahl to receive a fair hearing." Opdahl asked to call several witnesses who he asserted would testify to conversations with each of the Board members to the effect "the Opdahls have to go, or that, we've made up our minds, or, there's no way that Leon Opdahl can get a fair hearing because this is a done deal." [1]

The Board refused to hear testimony about the alleged bias of its members. In dismissing Opdahl's petition for a writ of mandamus, the district court concluded the Board had not abused its discretion because the evidence was not relevant under the "rule of necessity." *Danroth v. Mandaree Public School District No. 36,* 320 N.W.2d 780 (N.D. 1982).

▪ In cases of alleged bias where no provision has been made for a substitute tribunal, the "rule of necessity" precludes dismissal of the proceedings and requires otherwise disqualified officers to serve. *Danroth; First American Bank & Trust Co. v. Ellwein,* 221 N.W.2d 509 (N.D.), *cert. denied,* 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974). The necessity for a decision in the proceeding precludes a disqualification which will divest jurisdiction from the only tribunal with authority to decide the case. *Danroth.*

Opdahl argues *Danroth* is distinguishable because it involved allegations of bias by only *one* school board member and this case involves allegations of bias by *all* of the Board members. Opdahl also asks us to revisit application of the "rule of necessity" to teach-

---

1. Opdahl made an offer of proof that his witnesses would have all testified "as to the bias, that they'd have conversations with board members in regards to the fact that this is a ... the Opdahls have been here too long, that the Opdahls should watch out, that the Opdahl's are on their way out, that it's time to get rid of the Opdahls, things such as that."

er nonrenewal proceedings, because the doctrine subverts the goals of teacher nonrenewal law to act with "maximum consideration to basic fairness and decency" and to nonrenew teachers only upon "written or oral evidence presented at the" nonrenewal hearing. N.D.C.C. § 15–47–38(1) and (5).

Although *Danroth* involved allegations of bias by one school board member, the rule of necessity applies to allegations of bias by " 'a board member or the entire board.' " *Danroth*, 320 N.W.2d at 783, quoting *Ellwein*, 221 N.W.2d at 515. Under the rule of necessity, a presumption exists the board regularly performs its duties and affords the parties due process by refusing to allow any preconceived biases or judgments from interfering with a decision based on evidence presented at a hearing. *Ellwein*. See N.D.C.C. § 31–11–03(15). As we explained in *Ellwein*, the existence of a generalized attitude prior to a hearing is not necessarily a disqualifying bias.

The logical extension of Opdahl's argument is that any preexisting knowledge or judgment about the merits of a nonrenewal would require dismissal of the nonrenewal proceeding. That result is not conducive to a school board's authority to supervise schools, N.D.C.C. § 15–29–07, and to "contract with, employ, and pay all teachers in the schools and, for cause, to dismiss or suspend any teacher when the interests of the school may require it." N.D.C.C. § 15–29–08(10). In order to properly execute those responsibilities, school board members cannot operate schools in a vacuum and must be aware of the abilities and performances of personnel in their districts, which necessarily includes some preexisting knowledge and judgment about the personnel. Preexisting knowledge and judgment about a teacher do not necessarily constitute a disqualifying bias and do not mean board members' minds are irrevocably closed on a subject. Instead, board members are presumed to regularly perform their official duties. N.D.C.C. § 31–11–03(15); *Froysland v. North Dakota Workers Compensation Bureau*, 432 N.W.2d 883 (N.D.1988); *Ellwein; see Danroth*.

Here, Opdahl does not assert the Board was guilty of any impermissible bias on the basis of a factor like race, gender, or political affiliation. Instead, he contends each member of the Board had judged the merits of the nonrenewal proceeding prior to the hearing. This does not rise to the level of a disqualifying bias. We decline Opdahl's invitation to revisit application of the rule of necessity to these allegations of bias in a teacher nonrenewal proceeding. Opdahl has failed to demonstrate a clear legal right to present evidence about his allegations of bias, and the district court did not abuse its discretion in denying Opdahl's petition for a writ of mandamus on this claim.

IV

Opdahl asserts the Board violated his constitutional rights by using, as a basis for nonrenewal, his involvement in North Dakota Education Association activities during the school day. During the 1992–93 school year, classroom hours for Zeeland students were from 8:30 a.m. to 3:30 p.m., but teachers were required to remain at school until 4:00 p.m. each day. The time from 3:30 to 4:00 p.m. was designated as nonclassroom, nonstudent contact time for teacher preparation. Opdahl admits he spoke to other teachers about education association activities and a petition for control of the teacher negotiation group "during nonclassroom or nonstudent contact time." He argues there was no evidence he conducted those activities during his assigned classroom hours. Relying on *Texas State Teachers Ass'n v. Garland Independent School District*, 777 F.2d 1046 (5th Cir.1985), *aff'd memo.*, 479 U.S. 801, 107 S.Ct. 41, 93 L.Ed.2d 4 (1986), he contends he had the right to solicit support for N.D.E.A. activities during nonclassroom hours.

In *Garland*, a written school board policy totally prohibited a teacher organization from meeting or recruiting at schools during school hours and from using school communication facilities for the dissemination of information concerning employee organizations. School officials had interpreted the policy to prohibit any discussions about teacher organizations on school premises during lunch hour or other nonclassroom time. The *Garland* court held the first amendment did not require the school district to allow teacher

union representatives access to the schools during teaching hours, but also held restraints on teacher communications about teacher organizations during nonclassroom hours was unconstitutional.

Here, Opdahl does not rely upon a written policy restricting teachers' free speech. Instead, he argues there was no evidence he conducted N.D.E.A. activities during his assigned classroom hours. However, Opdahl ignores testimony by Wickre which supported a contrary inference and a February 9, 1993 document prepared by Wickre which stated Opdahl was soliciting teacher support for N.D.E.A. activities between "the hours of 8:30 a.m. and 4:00 p.m. This type of behavior is not acceptable as it is causing a division among the teachers and is upsetting to the teachers. Assigned time for professional teachers is to be used for planning and providing quality education for the students. This type of behavior takes away from the purpose of quality education."

Although the time from 3:30 to 4:00 p.m. was designated as nonclassroom, nonstudent contact time for teacher preparation, Opdahl was also employed as the elementary principal. An August 1992 memorandum on "Principal Duties" required that Opdahl devote the time from 3:34 to 4:00 p.m. daily to "the duties of the Principal." That time was subject to change only "according to educational needs of the students."

The record supports the Board's argument that it was not Opdahl's N.D.E.A. activities as such, but his conducting those activities during times when he was obligated to attend to other teaching and principal duties that contributed to nonrenewal. Unlike *Garland,* this is not a case involving "the right of teachers to discuss matters relating to employee organizations at times when the teachers would not otherwise be required to teach, but would be 'free to talk about whatever they want.' ..." *Garland,* 777 F.2d at

1054. Therefore, we conclude Opdahl has failed to establish the Board relied on an unconstitutional premise as a ground for nonrenewal.

### V

Opdahl asserts the Board impermissibly tied nonrenewal of the two positions together. He argues the Board relied on erroneous legal advice that economic practicalities required it to nonrenew both contracts, because financial constraints precluded hiring a replacement for only the principal position at the allotted salary of $1,400 per year.

■ For nonrenewal purposes, N.D.C.C. § 15–47–26 defines teacher as "all teachers, principals, and superintendents in all public school districts within this state." Section 15–47–38(5), N.D.C.C., requires an administrator to substantiate the reasons for nonrenewal of a teacher's contract. The Board notified Opdahl nonrenewal was contemplated for both the teacher and the principal contracts, and the Board heard evidence about Opdahl's abilities and performances at both jobs. The Board treated each contract separately and complied with the procedural requirements for nonrenewal of both contracts. Whether the reasons for nonrenewal of both contracts were substantiated involves a different question than whether the Board satisfied the procedural requirements for nonrenewal of both contracts. The district court determined the Board had complied with the procedural requirements for nonrenewal of both contracts, and Opdahl has failed to show a clear legal right to any different procedural requirements.

### VI

■ Opdahl asserts the administrator did not substantiate the reasons for nonrenewal of both contracts under N.D.C.C. § 15–47–38(5).[2] A court's review of a school board's

2. N.D.C.C. § 15–47–38(5) provides, in part:
"The reasons given by the board for not renewing a teacher's contract must be sufficient to justify the contemplated action of the board and may not be frivolous or arbitrary but must be related to the ability, competence, or qualifications of the teacher or the necessities of the district such as lack of funds calling for a

reduction in the staff. At the meeting with the board the teacher may then produce such evidence as may be necessary to evaluate the reasons for nonrenewal, and either party may produce witnesses to confirm or refute the reasons. The administrator shall substantiate the reasons with written or oral evidence presented at the meeting, unless the administrator

substantive reasons for nonrenewal is limited to whether those reasons are related to the ability, competence, or qualifications of the teacher and whether the Board abused its discretion in reaching the nonrenewal decision. *Belcourt; Dobervich.*

The Board's notice of nonrenewal informed Opdahl nonrenewal of his principal contract was contemplated because he did not set a professional example for students and teachers, did not work effectively with pupils in the administrative setting, did not adequately upgrade his administrative skills and knowledge of administration, did not effectively carry out board policy, did not possess the necessary communication skills for the position, and did not show adequate leadership in innovative education techniques. The Board's notice of nonrenewal advised Opdahl nonrenewal of his teaching contract was contemplated because he did not use innovative techniques to interest students in a particular discipline, did not portray an attitude conducive to furthering the learning process, did not properly supervise students during assigned times, did not follow the established school schedule, did not display a cooperative attitude towards administrative supervision, and had caused strife and unrest among the teachers. Because this issue involves substantiation for the nonrenewal of both the teaching and principal contracts and the Board treated each contract separately, we also review each separately. We recognize, however, some of the reasons for nonrenewal apply to both positions.

## A

■ Wickre formally evaluated Opdahl's teaching performance on November 18, 1992, and on February 23, 1993. Wickre's November 18, 1992 written evaluation suggested Opdahl encourage students to keep notebooks for class notes, continue to upgrade lesson plans to include objectives and activities, seek innovative ways to teach lessons, be flexible and learn to handle changes that occur in education, be innovative in teaching and continue to upgrade teaching skills, and refrain from leaving students unsupervised before, during, or after school.

Wickre's February 23, 1993 written evaluation of Opdahl's teaching performance indicated Opdahl's instructional objectives were not readily apparent and classroom activities did not clearly relate to instructional activities. The evaluation suggested Opdahl encourage students to take class notes, refrain from leaving students unsupervised during assigned classes, clearly state objectives of each lesson, use a summation or overview of each lesson, and continue to seek ways to be innovative.

Wickre testified at the nonrenewal hearing Opdahl's teaching performance had not improved during the year. According to Wickre, Opdahl failed to use innovative teaching techniques, failed to follow school policies, and told another teacher not to worry about preparing lesson plans because "they'll forget about it." There was also evidence Opdahl left students unsupervised on some occasions and signed out of school 35 times when he was responsible for supervising students.

Although Opdahl offered separate explanations for each deficiency and although some of the reasons for nonrenewal, by themselves, may not have been sufficient to justify nonrenewal, the evidence, as a whole, indicates Wickre substantiated the reasons for nonrenewal of Opdahl's teaching contract. Compare *Baker v. Minot Public School District No. 1*, 253 N.W.2d 444 (N.D.1977) (administrator failed to substantiate nonrenewal of teacher where the teacher had received only favorable evaluations and the reason for nonrenewal was one isolated instance when the teacher left students unattended for twenty minutes to shovel snow from his driveway). The Board heard conflicting evidence about Opdahl's performance as a teacher. The Board was in a better position to evaluate the conflicting evidence, and it could have reasonably concluded Wickre sub-

is the subject of the contemplated nonrenewal, in which case the board shall substantiate the reasons with written or oral evidence presented at the meeting. All witnesses are subject to questioning for the purposes of clarification.

At the meeting, the board shall discuss the evidence presented. If the reasons for nonrenewal have not been substantiated, the nonrenewal proceedings will be dismissed."

stantiated nonrenewal of Opdahl's teaching contract for reasons related to his "ability, competence, or qualifications." N.D.C.C. § 15–47–38(5). The Board did not abuse its discretion in not renewing Opdahl's teacher contract.

## B

Wickre formally evaluated Opdahl's performance as an elementary principal on January 7, 1993. Additionally, Wickre documented other meetings with Opdahl which addressed Opdahl's performance as an elementary principal. A September 1, 1992 document indicated "[e]lementary students are not following assigned programs" and "[d]ecisions are being made without authorization that leads to a breakdown of administrative control." Wickre noted "[t]his type of behavior is upsetting as it appears that [Opdahl] is trying to make the operation of this school a power struggle" and "[i]t is necessary that [Opdahl] follow established procedures even if they are different from previous years." Wickre later noted Opdahl was "undermining the system and that it was not good for the school." Wickre's formal evaluation summarized:

> "Mr. Opdahl has been in this school district for a number of years and presents the attitude that he is exempt from educational improvements and supervision. He appears reluctant to accept supervision and educational changes without involving others in negative comments. Mr. Opdahl has been critical of reporting student accidents, lesson plan requirements, curriculum guides, N.D.E.A. days, school disaster plan, classroom supervision, use of school time by teachers and the Chapter # 1 program. This type of attitude has a tendency to keep the school in a state of unrest and makes it difficult for one to work with him. The Superintendent has discussed concerns with Mr. Opdahl on several occasions relating to: duties of the Elementary Principal, time on task to eliminate lifting weights and eating breakfast on school time, supervision of students before, during and after school, not following the set school schedule by holding basketball practice during assigned classes, informing the teachers of false information concerning the N.D.E.A. convention and leaving the classroom unsupervised.
>
> "Mr. Opdahl seems to have a problem coming to grips with his role in the school system."

Although Opdahl offered conflicting evidence about his performance as a principal, the Board could have reasonably concluded Wickre's evaluations substantiated nonrenewal of Opdahl's principal contract for reasons related to his "ability, competence, or qualifications." N.D.C.C. § 15–47–38(5). The Board did not abuse its discretion in not renewing Opdahl's principal contract.

## C

Opdahl failed to demonstrate a clear legal right to renewal of either his principal or teaching contract. The district court did not abuse its discretion in refusing to issue a writ of mandamus to require the Board to issue a contract for either position.

The district court judgment is affirmed.

VANDE WALLE, C.J., and NEUMANN and LEVINE, JJ., concur.

MESCHKE, J., concurs in the result.